**In the Interest of J.F.**

**Appeal of A.V.H.**

Superior Court of Pennsylvania.

Argued May 10, 2011.
Filed Aug. 10, 2011.

A.V.H., appellant, pro se.

Lester R. Zipris, Doylestown, for appellee.

Cynthia N. Keller, Philadelphia, for participating party.

BEFORE: DONOHUE, MUNDY and STRASSBURGER *, JJ.

OPINION BY DONOHUE, J.:

A.V.H. ("Foster Mother"), appeals from the trial court's order entered on August 25, 2010, granting the Philadelphia Department of Human Services ("DHS") permission to remove J.F., a female child born in March of 2003 ("Child"), from Foster Mother's home. After careful review, we affirm.

The pertinent facts underlying this appeal are as follows. On October 8, 2008, DHS was granted protective custody after Child was abandoned by her biological mother at a drug and alcohol recovery program where her biological mother was residing while obtaining treatment. Child was placed in shelter foster care, and DHS filed a dependency petition. The trial court adjudicated Child dependent on November 3, 2008, and ordered Child to remain in foster care through Methodist Family Services ("Methodist").

After several failed placements, Child was placed in Foster Mother's home in December of 2009 for the purposes of adoption.[1] Various concerns arose regarding Foster Mother's care of Child and her compliance with foster care regulations.[2] Methodist held a meeting on August 3, 2010 to address these concerns with Foster Mother and to explain to her that her compliance was necessary for the adoption process to continue. On August 6, 2010, Foster Mother emailed Methodist, requesting that they remove Child from her

---

\* Retired Senior Judge assigned to the Supreme Court.

1. Child's biological father voluntarily relinquished his parental rights to Child, and the rights of Child's biological mother were involuntarily terminated by the trial court on April 20, 2010. Child's biological mother appealed the decree terminating her rights. That decision was still outstanding at the time of the pertinent hearing in this matter.

2. The concerns expressed at the hearing included Foster Mother's unavailability for home visits by Methodist and Child's mental health services (N.T., 8/25/10, at 30–31, 60); her failure to abide by a psychologist's recommendations for Child to have medication and sibling visits (*id.* at 47–49); her failure to

arrange for Child's medical appointments and provide required documentation (*id.* at 63–64); her placement of Child in an unaccredited kindergarten program instead of first grade at her local public school and her failure to inform any of the service providers of the school change (*id.* at 38–39, 82); referring to Child as "crazy" and "a thief" to service providers in Child's presence (*id.* at 44, 67); Foster Mother's lack of involvement in Child's education (*id.* at 40–41, 62–63); and the submission of two incident reports regarding Foster Mother's care of Child—one involving Foster Mother's failure to attend to Child's hair, the other alleging that Foster Mother hit Child for playing with Play–Doh on the floor (*id.* at 67–69).

home within 30 days.[3] Methodist responded on August 10, 2010 accepting her 30–day notice. Upon receiving Methodist's acceptance of her resignation, Foster Mother attempted to withdraw her notice, but by that time, Methodist was no longer recommending that Foster Mother adopt Child. On August 20, 2010, DHS requested that the regularly scheduled permanency hearing be emergently rescheduled to seek judicial removal of Child from Foster Mother's home. Said hearing was held on August 25, 2010. The trial court denied Foster Mother counsel at the hearing, but permitted her to participate in the proceedings, rebut the testimony of witnesses presented, call her own witnesses, and submit exhibits.

At the conclusion of the hearing, the trial court granted DHS's request to remove Child from Foster Mother's home. This timely *pro se* appeal followed, wherein Foster Mother raises the following issues for our review:

1. Whether the trial court committed an error of law and/or abused its discretion when it granted [DHS] a verdict which denied due process to [Foster Mother]?

2. Was [Foster Mother] denied counsel and the right for court preparation?

3. Did [Foster Mother] get denied the right to cross examine [sic] the witnesses?

4. Did the [child] advocate give [Foster Mother] conflicting information and deny [Foster Mother] the right to participate in [Child's] [sic]? Was [Foster Mother] denied the opportunity to ask the [child] [a]dvocate questions in court?

5. Whether the trial court committed an error of law and/or abused its discretion by not allowing [Foster Mother's] positive report entered into the record?

6. Whether the trial court committed an error of law in not referring the case back to the Master that knew the correct circumstances of the case, when [Foster Mother] had stated that she had reported a threat against her to the court earlier in August?

7. Did the trial court abuse its discretion by not investigating [Foster Mother's] claim that she had been threatened by the agency and had reported it to the Master?

Foster Mother's Brief at 4–5.[4]

█ Prior to discussing the substantive issues raised by Foster Mother on appeal, we first address the appellees' (DHS and the guardian *ad litem*) contention that Foster Mother's brief should be quashed because of her failure to comply with the Pennsylvania Rules of Appellate Procedure. We have reviewed Foster Mother's brief and observe that she has failed to substantially comply with the Rules of Appellate Procedure.[5] Although the ap-

---

**3.** Foster Mother testified that she submitted her 30–day notice out of frustration with the Methodist foster care caseworker, how she was being portrayed by Methodist, and out of concern for her own future. The record reflects that there was a high degree of conflict between Foster Mother and the foster care caseworker.

**4.** We have reordered the issues to aid in our disposition.

**5.** Specifically, Foster Mother's brief does not contain a proper Statement of Jurisdiction (Pa.R.A.P. 2114), the complete text of the Order in Question (Pa.R.A.P. 2115), the Scope of Review and Standard of Review setting forth applicable legal principles (Pa.R.A.P. 2111(a)(3)), or a Summary of Argument (Pa.R.A.P. 2118). Furthermore, Foster Mother fails to include citations to the record in the Argument section of her brief (Pa.R.A.P. 2119). Finally, Foster Mother's Statement of

pellees are correct that this Court may suppress an appellate brief and quash an appeal based upon the appellant's failure to abide by the Rules of Appellate Procedure, because we are able to discern the issues raised by Foster Mother on appeal, we decline to do so in this case. *See Wilkins v. Marsico,* 903 A.2d 1281, 1285 (Pa.Super.2006) (deciding issues raised on appeal by *pro se* appellant because, "[d]espite the numerous defects in his brief, we are able to identify Appellant's issues.").

▆▆▆ The first four issues raised on appeal by Foster Mother all assert due process concerns based upon the trial court's denial of her right to counsel and right to cross-examine witnesses. In short, Foster Mother argues that the trial court erred by denying her standing as a party to participate in the August 25, 2010 hearing.[6] Both the trial court and DHS contend that Foster Mother lacked standing to participate as a party in the dependency proceedings. *See* Trial Court Opinion, 12/17/10, at 6–7; DHS's Brief at 12–14. The issue of standing is a question of law, and our review is plenary. *In re B.S.,* 923 A.2d 517, 521 (Pa.Super.2007).

Initially, we note that prior to July 1, 2011, the county agency was not obligated by statute or rule to obtain judicial permission prior to modifying a dependent child's placement.[7] Thus, under the law, no hear-

---

the Case contains argument, and does not present the procedural and factual histories of the case (Pa.R.A.P. 2117).

6. Although it does not appear of record, it is clear that Foster Mother requested counsel at the inception of the hearing, as the trial court begins the hearing by stating: "[Foster Mother], I've made the determination that you're not entitled to have counsel." N.T., 8/25/10, at 6. The trial court did not create a record of this request, or any other matters that may have transpired prior to the commencement of the hearing.

7. On April 29, 2011, Pennsylvania adopted Rule 1606, effective July 1, 2011, which states:

A. *County agency's duties.*
1) Emergencies.
a) Only in an emergency when a judge cannot be reached, a child may be placed temporarily in a shelter care facility or other appropriate care.
b) The county agency immediately shall notify the court and all parties of any change made due to the emergency.
c) The county agency shall file a motion or stipulation for modification of the dispositional order by the next business day of the child's placement in a shelter care facility or other appropriate care.
2) Non-emergent cases. In all other cases, the county agency shall seek approval of the court for a change in the child's placement prior to the removal of the child from the placement by the filing of a motion or a stipulation for modification of the dispositional order.
B. *Contents of the motion.* The motion for modification of the dispositional order shall include:
1) the specific reasons for the necessity of change to the order;
2) the proposed placement;
3) the current location of the child;
4) the manner in which any educational, health care, and disability needs of the child will be addressed;
5) an averment as to whether each party concurs or objects to the proposal, including the child's wishes if ascertainable; and
6) the signatures of all the parties.
C. *Objections.* If a party objects to proposed modification of the dispositional order, the objections shall be filed no later than three days after the filing of the motion for modification of the child's placement.
D. *Court's duties.* Once the county agency has requested approval from the court to modify a child's placement or after an emergency change in placement has already taken place, the court may:
1) schedule a prompt hearing to determine whether there will be a modification of the child's placement;
2) enter an appropriate order to modify the child's placement; or

ing was required at the time Child was removed from Foster Mother's care.[8] The record reflects, however, that the trial court appropriately created an internal policy requiring DHS to seek its permission prior to modifying a child's placement. *See* N.T., 8/25/10, at 87. Because a hearing was convened, we will assess what rights Foster Mother was entitled to at that hearing.

Dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.* The Juvenile Act provides that all parties to a dependency proceeding are entitled to counsel and to present evidence and cross-examine witnesses. 42 Pa. C.S.A. §§ 6337, 6338. Foster parents, pre-adoptive parents, and other caregivers, however, are not automatically considered parties to a dependency proceeding. Rather, a pre-adoptive parent's right to participate in a dependency proceeding is governed by section 6336.1(a), which states:

> The court shall direct the county agency or juvenile probation department to provide the child's foster parent, pre[-]adoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, pre[-]adoptive parent or relative providing care for the child the right to be heard at any hearing under this chapter. Unless a foster parent, pre[-]adoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, pre[-]adoptive parent or relative providing care for the

child legal standing in the matter being heard by the court.

42 Pa.C.S.A. § 6336.1(a). Therefore, the Juvenile Act is clear that if a foster parent, pre-adoptive parent, or relative providing care for a child has not been granted legal custody of the child, he or she does not have standing to participate as a party in the dependency proceeding, and instead is entitled to notice of the hearing and the opportunity to be heard.

Foster Mother does not contend, and the record does not reflect, that she was awarded legal custody of Child. To the contrary, DHS is legal custodian of Child. *See* N.T., 8/25/10, at 87. Because, pursuant to section 6336.1(a), Foster Mother does not have standing, she does not have the rights of a party, *i.e.*, the right to counsel, to call witnesses, and to conduct cross-examination. *See* 42 Pa.C.S.A. §§ 6336.1(a), 6337, 6338. As such, to the extent that the trial court denied Foster Mother any of these opportunities, the trial court did not err.

■ Pursuant to section 6336.1(a), however, Foster Mother was clearly entitled to notice of the hearing and an opportunity to be heard. Thus, we address the adequacy of the notice provided to Foster Mother and her opportunity to be heard.

The record reflects that the trial court permitted Foster Mother to be heard at the August 25th hearing. It allowed Foster Mother to express her position, to update the court about her care of Child, and to rebut the contentions of the testifying witnesses at the beginning of the hearing (N.T., 8/25/10, at 6–26), after DHS's direct examination of its first witness (*id.* at 49–53), and at the conclusion of the hearing

---

3) enter an order denying the motion. Pa.R.J.C.P. 1606.

**8.** The county agency has always been required to obtain judicial permission prior to

removing a child from his or her parent, legal guardian or custodian. *See* 42 Pa.C.S.A. § 6324. As we explain in further detail *infra,* Foster Mother does not fall into any of those categories.

(*id.* at 102–12). Indeed, the trial court went beyond merely allowing Foster Mother "to be heard," as it allowed her to submit exhibits in support of her position and to call witnesses to testify on her behalf. *Id.* at 16–17, 90. We therefore find the trial court did not err in its treatment of Foster Mother at the hearing in question.

■ Regarding the notice provided to Foster Mother, the record reflects that the August 25th hearing was a rescheduled permanency review hearing.[9] DHS requested that the November 8, 2010 listing be expedited to August 25, 2010, as DHS was seeking judicial removal of Child from Foster Mother's home based upon Foster Mother's submission of a 30–day notice for Child's removal. Request for Emergency Hearing, 8/20/10. Generally, Foster Mother would have been entitled to at least 15 days' notice of the permanency review hearing. Pa.R.J.C.P. 1601(5). However, there were not 15 days between the scheduling of the emergency hearing and its listing, thus rendering 15 days' notice impossible. The law does not specify how much notice a pre-adoptive parent is entitled to for an emergently rescheduled permanency review hearing.

9. Permanency hearings are conducted at statutorily mandated intervals to determine or review: the permanency plan for the child, when permanency for the child might be achieved, and whether the child's placement continues to be best suited to his or her safety, protection, and physical, moral and mental welfare. 42 Pa.C.S.A. § 6351(e)(1), (3). At every permanency hearing, the trial court must determine the following:

(1) The continuing necessity for and appropriateness of the placement.
(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
(4) The appropriateness and feasibility of the current placement goal for the child.
(5) The likely date by which the placement goal for the child might be achieved.
(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.
(6) Whether the child is safe.
(7) If the child has been placed outside the Commonwealth, whether the placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.
(8) The services needed to assist a child who is 16 years of age or older to make the transition to independent living.
(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:
  (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;
  (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or
  (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.
(10) If a sibling of a child has been removed from his home and is in a different placement setting than the child, whether reasonable efforts have been made to place the child and the sibling of the child together or whether such joint placement is contrary to the safety or well-being of the child or sibling.
(11) If the child has a sibling, whether visitation of the child with that sibling is occurring no less than twice a month, unless a finding is made that visitation is contrary to the safety or well-being of the child or sibling.

At the hearing, Foster Mother stated she received a subpoena to attend the August 25th hearing the day before, on August 24, 2010. N.T., 8/25/10, at 51. The record reflects that Foster Mother was not only able to attend the hearing herself, but brought two potential witnesses with her as support. *Id.* at 2, 3. Therefore, although the notice provided to Foster Mother did not and could not meet the statutorily mandated notice period, we do not find fault with the timing of Foster Mother's notification of the hearing as it was reasonable under the circumstances present in this case.

We are concerned, however, by the content of the notice provided to Foster Mother. As stated by our Supreme Court: "[S]ince the primary objective of notice is to ensure the opportunity for a meaningful hearing, *see City of West Covina v. Perkins*, 525 U.S. 234, 240 [119 S.Ct. 678, 142 L.Ed.2d 636] (1999), we believe that reasonable factual specificity is required in the dependency setting." *In re R.M.*, 567 Pa. 646, 654, 790 A.2d 300, 305 (2002).

Furthermore, section 6336.1(b) states that a foster parent, pre-adoptive parent, or relative providing care is entitled to notice of their right to submit a report prior to a permanency hearing regarding the child's "adjustment, progress and condition." 42 Pa.C.S.A. § 6336.1(b). This implicitly indicates that a pre-adoptive parent must have notice regarding the purpose of the hearing such that a proper report can be provided.

■ In her appellate brief, Foster Mother contends that she had no notice of the purpose of the hearing until she arrived at court the following morning.[10] Foster Mother's Brief at 5. There was only one purpose for this hearing—to request the judicial removal of Child from Foster Mother's care. This purpose should have appeared in the Subpoena to Testify which was served on Foster Mother.[11] Based upon the circumstances preceding the hearing and at the hearing itself, however, we conclude that Foster Mother was nonetheless aware of the purpose of the hear-

42 Pa.C.S.A. § 6351(f).

**10.** Once again, because there is no record of the beginning of the hearing when Foster Mother requested counsel, we do not know what argument, if any, Foster Mother made regarding her lack of notice. Foster Mother appended a copy of the subpoena to her brief, which indicates that Foster Mother was ordered to attend court and testify on behalf of "yourself," with no other information about the purpose of the hearing. The subpoena, however, is not contained in the certified record on appeal. "It is well-settled that this Court may only consider items which have been included in the certified record and those items which do not appear of record do not exist for appellate purposes." *Stumpf v. Nye*, 950 A.2d 1032, 1041 (Pa.Super.2008); *see also Cummins v. Rosa*, 846 A.2d 148, 149 n. 5 (Pa.Super.2004) ("It is Appellants' responsibility to provide a complete certified record on appeal."). However, as previously noted, it is apparent from the record that certain matters were raised with the trial court prior to the time when transcription of

the proceedings commenced. *See supra*, n. 6. As a result, we will review Foster Mother's challenge to the adequacy of the notice of the purpose of the hearing since it is of the same genre as the challenge to the right to counsel which was raised prior to the commencement of the transcription of the proceedings. *Id.* Further, because foster parents without legal custody do not have the right to counsel at permanency hearings, it is unlikely that a *pro se* foster parent will ever have the knowledge of the rules of evidence necessary to protect the record by offering as evidence the documents purporting to meet the notice requirement of 42 Pa.C.S.A. § 6336.1(a). Thus, the issue presented here by Foster Mother would forever escape our review.

**11.** The subpoena appended to Foster Mother's brief provides no information about the purpose of the hearing. *See supra*, n. 10. The subpoena should have been accompanied by notice of the specific purpose of the hearing. *See In re R.M.*, 567 Pa. at 654, 790 A.2d at 305.

ing and that a meaningful hearing was conducted.

The record reflects that Methodist held a meeting on August 3, 2010, which Foster Mother, the child advocacy social worker, and representatives from DHS, Holcomb Behavioral Health Systems [12] and Methodist attended. The purpose of the meeting was to address concerns they had with Foster Mother's care of Child and her compliance as a foster parent.[13] According to the Methodist supervisor, Dion Cosby ("Cosby"), at the conclusion of the meeting, "it was understood that at that time that [Foster Mother] was still the pre-adoptive parent, that she would comply with everything that needed to be complied with in order to get this case to finalization[.]" N.T., 8/25/10, at 82.

In the days that followed, however, Foster Mother did not "comply with everything" that had been discussed, including once again changing Child's school without permission, and emailing Methodist claiming that the foster care social worker assigned to Child's case, Tierra Council ("Council"), was judicially prohibited from entering her home. *Id.* at 76, 82. Despite Foster Mother's insistence, Cosby informed Foster Mother that Council would not be removed from Child's case, and that she was required by local and state regulations to see Child in Foster Mother's home twice each month. Subsequently, on Au-

gust 6th, Foster Mother emailed Methodist, requesting that they remove Child from her home within 30 days. *Id.* at 80. The executive director of Methodist responded by accepting her resignation as Child's pre-adoptive parent on August 10th, after which Foster Mother emailed to withdraw her 30–day notice. *Id.* at 81. By that point, however, Methodist was no longer recommending that Foster Mother adopt Child. *Id.*

The record further reflects that Foster Mother brought two potential witnesses to the hearing to support her, a pastor and a friend, indicating that she was aware that she might need to present evidence at the hearing.[14] *See id.* at 2, 3. Moreover, prior to the first witness being called, the trial court asked Foster Mother if she wished for Child to be removed from her care, and Foster Mother responded at length by addressing several of the concerns raised by Methodist and Holcomb during the course of the hearing. *See id.* at 6–26.

Foster Mother also testified that Methodist threatened that if she did not comply, she would not be permitted to adopt. *Id.* at 103. In her appellate brief, Foster Mother acknowledged that "[w]hen Methodist canceled [Foster Mother's and Child's] vacation, [Foster Mother] knew they were going to follow through on their threat[.]" [15] Foster Mother's Brief at 8.

---

12. Holcomb Behavioral Health Systems is a mental health services provider working with Child. Child is diagnosed with ADHD and has had some behavioral problems, including stealing, destroying property, and angry outbursts. Nicole Kinsey, a behavioral specialist consultant, had been assigned to Child in August of 2009, and was responsible for seeing to Child's behavioral health needs in all facets of her life. Child is to be seen two hours each week, divided in her home, school, and community.

13. *See supra,* n. 2.

14. The trial court excluded these individuals from the proceedings at the request of the guardian *ad litem* because "dependency matters are generally closed," but instructed them to wait outside in case they were called as witnesses. *Id.* at 4. When given the opportunity, Foster Mother did not call either of these individuals to testify.

15. The record reflects that Foster Mother was apprised that Child would not be permitted to accompany her on vacation the day before the hearing. N.T., 8/25/10, at 5.

But for the particular circumstances of this case, we would find the lack of notice to be a fatal defect requiring remand. Because the record reflects that Foster Mother was aware of the purpose of the hearing, and a meaningful hearing was conducted, however, we conclude that no relief is due. *See In re R.M.*, 567 Pa. at 654, 790 A.2d at 305.

The remaining issues raised on appeal by Foster Mother all pertain to rulings made by the trial court during the hearing. Because we have concluded that Foster Mother lacked standing to participate in the hearing, we are without jurisdiction to decide the remaining issues raised.[16] *See K.B. II v. C.B.F.*, 833 A.2d 767, 774 (Pa.Super.2003) ("When a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. Standing then becomes a jurisdictional prerequisite to an action.") (emphasis omitted).

Order affirmed.[17]

**16.** We have reviewed the record and observe that none of the remaining issues were raised by Foster Mother at the August 25, 2010 hearing. Because we find that we lack jurisdiction to decide these issues, however, we do not address the matter of waiver. *See* Pa. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

**17.** We note with surprise that Child was not present at the hearing, nor was Child's position placed on the record by Child's guardian *ad litem*. *See* 42 Pa.C.S.A. § 6351(e) ("In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan in a manner appropriate to the child's age and maturity. If the court does not consult personally with the child, the court shall ensure that the views of the child regarding the permanency plan have been ascertained to the fullest extent possible and communicated to the court by the guardian *ad litem* [.]"); *see also* 42 Pa.C.S.A. § 6311(9) (stating that the guardian *ad litem* is required to communicate the child's wishes to the court to the extent they can be ascertained); Pa.R.J.C.P. 1154(9) (same). Because this failure was not challenged on appeal, however, we do not address it in this Opinion.