J-A20032-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.A.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.S. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1750 WDA 2017 |

Appeal from the Order Entered October 27, 2017
In the Court of Common Pleas of Jefferson County Domestic Relations at
No(s):  Docket No. CP-33-DP-0000014-20,
FID: 33-FN-000005-2017

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED SEPTEMBER 24, 2018**

J.S., paternal grandmother, (Grandmother) appeals from the order, entered in the Court of Common Pleas of Jefferson County, terminating her guardianship rights to A.A.S., her five-year-old granddaughter (Child).  After our review, we vacate and remand.

Following allegations of abuse, and pursuant to an order for emergency protective custody, the court on February 26, 2017, transferred custody of Child to Jefferson County Children and Youth Services Agency (CYS).  **See** Order, 2/16/17.  At that time, Grandmother was Child's legal guardian.  That same day, CYS placed Child with a foster family.  The court ordered psychological examinations for Grandmother, as well as for mother and father,[1] and ordered Child have no contact with her parents or Grandmother

_____

[1] Father's parental rights have since been terminated.

until the psychological evaluations were complete and CYS had completed its investigation. *See* Order, 2/16/17.

CYS filed a dependency petition on February 17, 2017, and the court held a hearing on April 27, 2017. At the conclusion of the hearing, the court found Child dependent pursuant to 42 Pa.C.S. § 6302. *See* Order, 5/4/17. A permanency hearing was held on July 24, 2017, continuing placement of Child. *See* Order, 7/26/17. In her brief, Grandmother, who had recently moved, claims she provided her new address to CYS. She also claims that neither she nor counsel received a copy of the July 26, 2017 order continuing placement.

The court held a permanency review hearing on October 25, 2017. Grandmother did not appear; Child's mother, mother's attorney, and mother's husband were in attendance. CYS caseworker Kristin Moore testified that Child is doing well with her current foster family and has started pre-Kindergarten at the local Catholic school. N.T. Hearing, 10/25/17, at 5-7.

Moore also testified that Grandmother was diagnosed with factitious disorder imposed on another,[2] and that Grandmother's psychological evaluation stated that she "is not suitable to care for others especially those

---

[2] Factitious disorder imposed on another, also known as Münchausen syndrome by proxy (MSP), is a psychological disorder in which caregivers fabricate or intentionally cause symptoms in those they are caring for in order to seek and obtain medical investigation or treatment (i.e., to assume the sick role by proxy). Typically, the caregiver is the mother, who behaves as if distressed about her child's illness and denies knowing what caused it; she is believed to be motivated by the hope that she will be seen as an exceptionally attentive parent, and her behavior may be an attempt to arouse sympathy. https://dictionary.apa.org/munchausen-syndrome-by-proxy (last visited 9/10/18).

of whom are dependent on her care including [Child]." *Id.* at 10. Moore read from the evaluation, which was admitted into evidence as CYS Exhibit 1:

> The factitious disorder imposed on another has been assigned due to [Grandmother's] exaggerating and fabricating symptomology in [Child] with several noted instances of possible deception. She's involved [Child] in the role of requiring and receiving unnecessary medical and psychiatric treatment and has presented herself as a helpful, attentive, and excessively present caregiver; and she had knowingly used several healthcare providers at the same time without informing the providers. And she's reportedly coaching [Child] to behave inappropriately to say that certain people have abused her possibly causing confusion in [Child].

*Id.* at 12, 14.

At the conclusion of the hearing, the court terminated Grandmother's guardianship, ordered further evaluations for mother and Child in order to determine when supervised visitation with mother would be appropriate, and ordered a permanency review in three months.[3] *Id.* at 14-15.

On appeal, Grandmother raises the following issues for our review:

1. Whether the trial court erred by holding a permanency review hearing without due and proper notice being given to [Grandmother] as to the date and time of hearing?

2. Whether the trial court erred by issuing a permanency review order terminating all guardianship rights of [Grandmother] and ordering that she no longer receive notice of future hearings without first granting appellant the opportunity of a full hearing on the matter?

3. Whether the trial court erred by issuing a permanency review order based on a psychological evaluation of

_____

[3] CYS had no address for father. The court noted that father has had no involvement with Child for at least eight months. N.T. Hearing, *supra* at 24.

- 3 -

> [Grandmother] without first granting [Grandmother] the opportunity of a full hearing on the contents of the report?

Appellant's Brief, at 5-6.

> Under the Juvenile Act, attendance at and participation in dependency proceedings are restricted. Dependency hearings are closed to the general public. Only a "party" has the right to participate, to be heard on his or her own behalf, to introduce evidence, and/or to cross-examine witnesses. Although the Juvenile Act does not define "party," case law from this Court has conferred the status of party to a dependency proceeding on three classes of persons: (1) the parents of the juvenile whose dependency status is at issue; (2) **the legal custodian of the juvenile whose dependency status is at issue** [;] or (3) the person whose care and control of the juvenile is in question. These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian. Due process requires that the child's legal caregiver, be it a parent or other custodian, be granted party status in order to be able to participate and present argument in the dependency proceedings.

*In re L.C., II*, 900 A.2d 378, 381 (Pa. Super. 2006) (emphasis added) (citations omitted). There is no dispute that Grandmother is a "party" to this action under the Juvenile Act; Grandmother was Child's legal guardian prior to the dependency disposition. *See generally* 42 Pa.C.S.A. § 6336.1 (Notice and hearing).

With respect to procedural due process, this Court has stated: "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A., II*, 683 A.2d 297, 300

- 4 -

(Pa. Super. 1996), citing **Mathews v. Eldridge**, 424 U.S. 319 (1976). **See also In re R.M.**, 790 A.2d 300, 307 (Pa. 2011) ("In the due process notice context, [] the United States Supreme Court has emphasized procedure over salutary result, to assure necessary accommodation of all constitutionally protected interests involved.").

Grandmother argues she was never notified of the October 25, 2017 permanency hearing in accordance with the Rules of Juvenile Court Procedure and that the court erred in allowing the hearing to proceed without her or her counsel in attendance. She also argues the court erred in presenting her psychological evaluation, without cross-examination, and in terminating her guardianship without a full hearing. CYS contends that the record reflects that Grandmother did receive notice. That contention, however, is not supported in the record.

The notice of the October 25, 2017 Permanency Review Hearing listed both Grandmother and her attorney, Frederick M. Neiswender, Esquire,[4] as persons to be served. That notice was filed on October 10, 2017. However, the October 10, 2017 docket entry indicates notice of the hearing was served to "Jefferson County Children and Youth Services." There is no indication in the docket that notice was sent to Grandmother or her attorney.[5]

---

[4] Attorney Neiswender entered his appearance on March 10, 2017.

[5] Our rules of court provide that "[t]he date of entry of an order is "***the day on which the clerk makes the notation in the docket that notice of***

- 5 -

Pennsylvania Rule of Juvenile Court Procedure 1601 provides: "**At least fifteen days prior to the hearing**, the court or its designee shall give notice of the permanency review hearing[.]")(emphasis added). Rule 1345(A)(2) provides, in relevant part:

> *Clerk of courts' duties*. [T]he clerk of courts shall docket a written motion, notice or document when it is received and record the time of filing in the docket. **The clerk of courts promptly shall transmit a copy of these papers to such person as may be designated by the court.**

Pa.R.J.C.P. 1345(A)(2) (emphasis added). The docket entries indicate that the October 10, 2017 notice was sent to CYS; the court notice, filed of record, is addressed to CYS and includes a "cc: to Grandmother and her attorney, among others. The court designated that notice be sent to Grandmother and her attorney, among others. **See id.**; **see also** Pa.R.J.C.P. 1167(B) ("**A copy of any order or court notice shall be served promptly on each party's attorney**, and the party, if unrepresented. The clerk of courts shall serve the order or court notice, unless the president judge has promulgated a local rule designating service to be by the court or its designee.") (emphasis added).

_____

**entry of the order has been given as required by Pa.R.C.P. 236(b)**." Pa.R.A.P. 108(b) (emphasis added). Rule 236 requires that notice be given to either the party or the party's attorney of record, and that such be noted in the docket. However, pursuant to Pa.R.J.C.P. 1100, Scope of Rules, "All dependency matters are governed by Chapters Eleven through Twenty [of the Juvenile Court Rules-Dependency Matters] (Rules 1100--2099)." Pa.R.J.C.P. 1100. Further, Rule 1100 states: "Unless specifically provided in these rules, the **Pennsylvania Rules of Civil Procedure** and the Pennsylvania Rules of Criminal Procedure **do not apply to dependency proceedings commenced pursuant to Rule 1200 and 42 Pa.C.S. § 6301 et seq.**" Pa.R.J.C.P. 1100B (emphasis added).

Rule 1166(C) (Contents of docket entries) provides that the docket entries "**shall** include, at a minimum, the following information: "***the date and manner of service of the order or court notice***[.]" Pa.R.J.C.P. 1166(C)(8)(c) (emphasis added).

As noted above, the docket entry of October 10, 2017 indicates only that notice was sent to CYS. Neither party has indicated whether the president judge has promulgated a local rule designating CYS as its designee to provide service to the parties, however, even if that were the case, CYS's attempt at eleventh-hour notice is defective as well. Although Attorney Neiswender acknowledges receipt of two emails from CYS, ***see*** Pa.R.J.C.P. 1167(B)(3)(a)(v) (service may be provided by electronic mail), one of which had the title, "Court Summary, Permanency Review, October 25, 2017[,]" CYS concedes that these emails were sent on October 20, 2017 and October 24, 2017.[6] Neither date meets the 15-day notice requirement in Rule 1601.[7] ***Cf. In re J.F.***, 27 A.3d 1017 (Pa. Super. 2011) (stating that "b]ut for the

_____

[6] There is no indication in the record that counsel provided CYS with authorization for service by fax or email, in accordance with Rule 1167. ***See*** Pa.R.J.C.P. 1167-Comment ("A facsimile number or electronic address set forth on the letterhead is not sufficient to authorize service by facsimile transmission or other electronic means under paragraph (B)(3)(a)(v)").

[7] In Grandmother's brief, counsel acknowledges that had he seen these emails he would have inquired further; however, he did not receive the emails until October 27, 2017, two days after the hearing, as the emails "were automatically placed in the junk folder of the firm's email and were only retrieved by coincidence during normal computer maintenance." Appellant's Brief, at 16.

particular circumstances of this case, we would find the lack of notice to be a fatal defect requiring remand[;]" record reflected foster mother attended hearing, was aware of purpose of hearing, and meaningful hearing was conducted, despite notice received one day prior). Moreover, the fact that the CYS solicitor stated at the hearing that Grandmother and her attorney received notice, or the fact that the CYS caseworker stated that she spoke with Grandmother's counsel's secretary, does not satisfy the notice requirements. N.T. Hearing, supra at 4. *See Fischer v. UPMC Northwest*, 34 A.3d 115 (Pa. Super. 2011) (prothonotary staff member's conversation with appellant's counsel's secretary regarding entry of order denying post-trial motion did not provide requisite notice of entry of order); *see also In re J.F.*, *supra* at 1024, n.10 (this Court may only consider items included in the certified record on appeal; those items that do not appear of record do not exist for appellate purposes).

We note that CYS filed a two-page letter in lieu of an appellee's brief, stating simply that Grandmother's counsel received notice by email correspondence and "stands by the Trial Court's Opinion[.]" Appellee's Letter, 4/16/18, at 1. The court's opinion, however, is imprecise on this issue and relies on the solicitor's statement at the hearing that "they [Grandmother and her attorney] did in fact receive notice[.]" Trial Court Opinion 1/18/18, at 1, *citing* N.T. Hearing, 10/25/17, at 4. The court's opinion does not mention the two emails. The opinion also states that, "Having spoken to [counsel's] secretary, he was certain that the notice had been received at least by

- 8 -

counsel." **Id.** In fact, it was caseworker Kristen Moore, not the solicitor, who testified that she spoke with Grandmother's counsel's secretary. N.T. Hearing, **supra** at 4.

The trial court states that "[t]he record reflects that [Grandmother] did received notice [since] the notice . . . filed October 10, 2017 listed both her and her attorney . . . as persons to be served." Trial Court Opinion, **supra** at 1. Although that is correct, we are unable to conclude that a "cc:" list in a filed notice of hearing supports a finding that the order was served to Grandmother and/or her attorney without a separate docket entry indicating such.

The Pennsylvania Rules of Juvenile Court Procedure require notice of a permanency hearing to be given at least fifteen days in advance. Pa.R.J.C.P. 1601. We conclude, therefore, that the record does not support a finding of "adequate notice." **In re J.N.F.**, **supra**. We vacate the trial court's order and remand for an expedited permanency review hearing.[8]

Vacated and remanded. Jurisdiction relinquished.

_____

[8] In light of our disposition we need not address Grandmother's remaining claims.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/2018