J-S39044-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF S. L. A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: L.A., FATHER | : | |
| | : | No. 862 WDA 2024 |

Appeal from the Decree Entered June 12, 2024
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s):  No. 43 Adopt 2023

| | | |
|---|---|---|
| IN RE: ADOPTION OF: L.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: L.A., FATHER | : | |
| | : | No. 863 WDA 2024 |

Appeal from the Decree Entered June 12, 2024
In the Court of Common Pleas of Fayette County Orphans' Court at
No(s):  44 ADOPT 2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                **FILED: January 17, 2025**

L.A (Father) appeals from the decrees terminating his parental rights to

S.L.A. (born in December of 2019), and L.S.A.[1] (born in July of 2021)

---

[1] Father and one of the children, L.A., share the same initials.  Throughout this memorandum, we will refer to the child as L.S.A.

(collectively, Children).[2,3]   On appeal, Father contends that Fayette County Children and Youth Services (the Agency) failed to establish by clear and convincing evidence the grounds to terminate his parental rights.  We affirm.

The trial court summarized the facts and procedural history of this appeal as follows:

> The Agency and the . . . dependency court has a history with this family since 2013 for concerns of parental conduct that placed M.A. at risk and inadequate shelter.  [M.A.] was only one (1) year of age when she was adjudicated dependent.  The case was closed on January 2, 2014.  In June of 2021, [M.A.] was taken to the hospital for a vaginal infection.  She was eight (8) years old. . . . That case was closed on June 28, 2021.  Thereafter, on September 27, 2021, information was divulged that [M.A.] had been sex trafficked by maternal grandmother from age five (5).  On October 13, 2021, [M.A.] disclosed multiple [instances of] sexual abuse with multiple perpetrators and described in detail the events.  Per interview by the Attorney General [on] October [19,] 2021, [K.E.N. (Mother) and Father (collectively, Parents)] apparently knew of the sex trafficking and that sexual abuse had occurred. The [dependency] court placed [M.A.] in foster care by emergency order dated October 19, 2021.  Th[e dependency] court also placed [S.L.A.] and [L.S.A] . . . in foster care.

Trial Ct. Op., 8/13/24, at 3 (some formatting altered).

The dependency court adjudicated M.A., S.L.A., and L.S.A. dependent on October 28, 2021.  *See id.*  The dependency orders permitted Father to

---

[2] On June 12, 2024, the trial court also entered a decree terminating Father's parental rights to M.A. (born in September of 2012).  Father did not appeal that decree.

[3] Mother's parental rights to M.A., S.L.A., and L.S.A. were terminated on the same date.  Mother filed separate appeals from all three termination decrees, which we will address in a separate memorandum.

have supervised visitation with S.L.A. and L.S.A., but Father was not permitted to have any visitation with M.A. ***See id.*** This remained the visitation arrangement throughout the underlying dependency matter. ***See*** N.T. Hr'g (afternoon), 4/16/24, at 9, 38; N.T. Hr'g (morning), 4/17/24, at 53.

In February of 2022, Agency placed S.L.A. and L.S.A. in foster care with S.G. and M.G. (Foster Parents), and they have remained in this foster home through the dates of the termination hearings. ***See*** N.T. Hr'g (afternoon), 4/16/24, at 31, 74; N.T. Hr'g (morning), 4/17/24, at 37-38.

The dependency court ordered Father to, among other things, "have a mental health assessment and treatment[,] if recommended[;] address domestic violence concerns[;] undergo anger management treatment . . . meet the daily needs of the children[;] maintain a bond with the children[;] and complete parenting classes." Trial Ct. Op., 8/13/24, at 3-4.

The trial court further explained that

[o]n December 15, 2021, the Agency received, and the [dependency] court reviewed a disturbing video[4] of Father hitting, kicking and extremely verbally assaulting [M.A.] in the presence of [S.L.A.]. Mother filmed the abuse as an outraged

---

[4] While admitted as an exhibit, a copy of this video was not included with the certified record. No party is challenging the contents or authenticity of this video. Therefore, given the descriptive nature of the testimony regarding this video and incident, this omission does not hamper our review. We, however, remind counsel that it is an appellant's "responsibility to provide a complete certified record on appeal." ***In re J.F.***, 27 A.3d 1017, 1023 n.10 (Pa. Super. 2011) (citations and quotation marks omitted); ***see also*** Pa.R.A.P. 1921, Note (stating "[u]ltimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials" (citation omitted)).

Father hit, kicked and screamed profanity at [M.A.] calling her despicable names such as "whore." [M.A.] appears to cower and to futilely [attempt to] escape the abuse. . . .

*Id.* at 4 (some formatting altered); *see also* N.T. Hr'g (afternoon), 4/16/24, at 19-20, 23-24 (testimony of Mallory Varndell, an Agency caseworker); *id.* at 29, 46-49 (testimony of Jennifer Guesman, an Agency caseworker). Parents were subsequently charged with simple assault and endangering the welfare of children. *See* Trial Ct. Op., 8/13/24, at 4. Further, Father was arrested in September of 2023 following a domestic violence incident involving Mother. *See* N.T. Hr'g (afternoon), 4/16/24, at 82-83, 92-93, 104 (testimony of Jennifer Hamilton, an Agency caseworker).[5]

Throughout the ensuing dependency proceedings, the dependency court conducted regular review hearings and maintained Children's commitment and placement. On July 20, 2023, the Agency filed petitions to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The trial court held evidentiary hearings on April 16, 2024, April 17, 2024, May 23, 2024, and June 12, 2024. Father was present and represented by counsel. S.L.A. and L.S.A., then four and three years old, respectively, were represented by a guardian *ad litem* (GAL), Kimberly Kovach, Esquire.

---

[5] The certified record does not contain any evidence regarding the outcome of these criminal proceedings against Father.

At the hearings, the Agency presented testimony from M.A.'s therapist, Megan Petak; Agency caseworkers Mallory Varndell, Jennifer Guesman, Alexandria Paull, Jennifer Hamilton, and Marissa Engle; surveillance investigator John Oldham; Justice Works Youth Care program director Laura Daumit, Justice Works Youth Care caseworker Lisa McDaid; and Carolyn Menta, Psy.D., a licensed psychologist. Father did not present any witness or testify on his own behalf.

Several witnesses testified that Children exhibit violent and/or self-injurious behaviors in connection with their supervised visitation sessions with Parents. This included screaming, banging their hands on surfaces, and S.L.A. pinching herself and pulling her hair. *See* N.T. Hr'g (afternoon), 4/17/24, at 17-18 (testimony of Ms. Daumit, program director at Justice Works), *id.* at 26-27, 31, 36, 38 (testimony of Ms. McDaid, a caseworker for Justice Works Youth Care); N.T. Hr'g, 5/23/24, at 36 (testimony of Mr. Ritchie, social service intervention provider for PurVue Individual and Family Services). Children have also hit others or attempted to bite others during visits with Parents. *See* N.T. Hr'g (afternoon), 4/17/24, at 27, 31, 36 (testimony of Ms. McDaid). S.L.A. has been referred to trauma therapy. *See* N.T. Hr'g (morning), 4/17/24, at 38, 55, 76 (testimony of Ms. Engle, an Agency caseworker).

Children suffer from developmental and health conditions. S.L.A. has been diagnosed with attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder. *See* Agency Exhibit 12 at 2. In addition, L.S.A.

has been diagnosed with autism.[6]  *See id*; *see also* N.T. Hr'g (morning), 4/17/24, at 89 (testimony of Ms. Engle).  Whereas Foster Parents were responsive to Children's varied mental health and medical needs, Father was not as involved, and he attended only two of fifteen medical appointments for L.S.A.  *See* N.T. Hr'g (morning), 4/17/24, 37-40, 72-74, 92 (testimony of Ms. Engle).

The trial court recognized Dr. Menta as an expert in psychology.  *See* N.T. Hr'g (afternoon), 4/17/24, at 49.  In January of 2024, Dr. Menta conducted a bonding assessment of Children, who at that time were four and two years old, respectively.  *See id.* at 64.  Dr. Menta first observed the interactions between Children and Parents, and then observed Children's interactions with Foster Parents.  *See id.* at 64-67.  Dr. Menta wrote in her report that Children appeared "rather anxious in the presence of" Mother and Father, and both Children exhibited anger and aggression.  Agency Exhibit 12 at 5; *see also* N.T. Hr'g (afternoon), 4/17/24, at 65.  Dr. Menta opined that both Children have an "insecure bond" with Father.  Agency Exhibit 12 at 5; *see also* N.T. Hr'g (afternoon), 4/17/24, at 67.  Conversely, Dr. Menta stated that "Children were notably much calmer and more relaxed with [] Foster Parents."  Agency Exhibit 12 at 5 (some formatting altered); *see also* N.T.

---

[6] L.S.A. was also diagnosed with a medical issue related to his skull prematurely closing, which was going to require future surgery to relieve the pressure, as well as ear, nose, and throat issues.  *See* N.T. Hr'g (morning), 4/17/24, at 37-38, 72-74 (testimony of Ms. Engle, an Agency caseworker).

Hr'g (afternoon), 4/17/24, at 66-67. She opined that both "Children appear to have secure attachment to [] Foster Parents." Agency Exhibit 12 at 5 (some formatting altered); *see also* N.T. Hr'g (morning), 4/17/24, at 57-58 (Ms. Engle testified that S.L.A. does not refer to Father as "dad" and S.L.A. has referred to herself using Foster Parents' surname).

Dr. Menta concluded:

The risks of severing [S.L.A.'s] and [L.S.A.'s insecure attachment with [] Parents are far outweighed by the benefits of allowing the children to continue to enjoy their secure bond with [] Foster Parents. Continuing in a family environment where they are securely attached will help with healthy emotional development, good self-confidence and self-esteem and will help them to have healthier relationships later in life.

Agency Exhibit 12 at 5-6 (some formatting altered).

Father enrolled in biweekly mental health treatment at Family Behavioral Resources for depression, anxiety, and intermittent explosive disorder, and this treatment initially included therapy, anger management, and medication. *See* N.T. Hr'g (afternoon), 4/16/24, at 59, 70-71 (testimony of Ms. Paull, an Agency caseworker). However, by October of 2023, Father was only receiving medication management from Family Behavioral Resources and was no longer enrolled in counseling. *See* N.T. Hr'g (morning), 4/17/24, at 30, 32-33, 67 (testimony of Ms. Engle). Father completed thirty-four, two-hour Nurturing Parenting classes at Justice Works Youth Care between January and April of 2022. *See* N.T. Hr'g (afternoon), 4/17/24, at 5-6 (testimony of

Ms. Daumit). However, Father did not receive passing scores on the two tests he took after completing the classes. *See id.* at 5-8, 11, 15.

Dr. Menta also saw Father on June 16, 2023 to conduct a parental capacity evaluation. *See* N.T. Hr'g (afternoon), 4/17/24, at 60; *see also* Agency Exhibit 11 (Dr. Menta's parental capacity evaluation for Father). Dr. Menta diagnosed Father with, *inter alia*, intermittent explosive disorder and narcissistic personality disorder. *See* Agency Exhibit 11 at 8; *see also* N.T., 4/17/24 (afternoon), at 63. Dr. Menta opined that Father "present[s] himself as quite narcissistic and lacks insight into his limitations as a parent. There is significant concern that his anger is not well-controlled. . . ." Agency Exhibit 11 at 9; *see also* N.T., 4/17/24 (afternoon), at 61, 63-64 (Dr. Menta testified that she was concerned about Father's narcissism and him appearing to be proud about his angry behavior). Further, Dr. Menta explained that Father "seemed to show very limited empathy for his children, if any[,]" and that she was concerned about Father's "limited empathy" and his "limited insight." N.T., 4/17/24 (afternoon), at 61. Therefore, she recommended that Father continue to participate in therapy focused on anger management, submit to a psychiatric evaluation and follow any recommendation for medication, and engage in parenting education. *See* Agency Exhibit 11 at 9; *see also* N.T., 4/17/24 (afternoon), at 63-64.

After the parental capacity evaluation, the Agency required that Father participate in additional parenting training, which he failed to do. *See* N.T.

Hr'g (afternoon), 4/16/24, at 93-94 (testimony of Ms. Hamilton, an Agency caseworker); N.T. Hr'g (morning), 4/17/24, at 51-52 (testimony of Ms. Engle).

By decrees dated and entered June 12, 2024, the trial court involuntarily terminated Father's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Father timely appealed from the decrees terminating his parental rights and simultaneously filed concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court filed an opinion addressing Father's claims.

On November 13, 2024, this Court entered an order directing the trial court to determine whether there was any conflict between Children's best interests and legal interests, such that separate legal counsel would need to be appointed to represent Children's legal interests. *See* Order, 11/13/24, at 3 (citing, *inter alia*, ***In re T.S.***, 192 A.3d 1080, 1092-93 (Pa. 2018)). The trial court entered an order on November 22, 2024, indicating that there was no conflict between Children's best interests and legal interests. Accordingly, the merits of Father's appeal are now ripe for our review.

Father raises the following issues on appeal:

1. Whether the trial court committed an error of law, and/or abused its discretion by way of terminating [Father's] parental rights where the [Agency] failed to present sufficient evidence to sustain its burden of proof and warrant the termination of [Father's] parental rights?

2. Whether the [Agency] failed to meet their burden of proof as set forth in [its] Petition for the Involuntary Termination of the [Father's] parental rights?

Father's Brief at 4 (some formatting altered).

> Our standard of review is well-established:
>
> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.
>
> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*In re M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (citations and quotation marks omitted). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted).

- 10 -

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We note that we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

## Section 2511(a)(2)

In his first issue, Father contends that the trial court erred when it concluded that clear and convincing evidence existed to justify involuntarily terminating his parental rights to L.S.A. Father's Brief at 8-13. Specifically, Father argues that the Agency failed to meet its burden of proof with regard to L.S.A. *Id.* at 11-13. Father claims that the testimony of Ms. Guesman, Ms. Paull, and Ms. Hamilton established that Father was cooperative with the Agency and was making progress towards the Agency's parenting plan goals. *Id.* at 9-11. Lastly, Father contends that the testimony of Ms. Johnson and Mr. Ritchie demonstrated that Father's interactions with S.L.A. and L.S.A.

during supervised visitation were appropriate, Children were becoming more comfortable during subsequent visits, and the visitation supervisors did not have any safety concerns. *Id.* at 11-12.

Section 2511(a)(2) provides as follows:

**(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

To prove the applicability of Section 2511(a)(2), the party petitioning for termination must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa. Super. 2021).

Further, this Court has explained:

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are "not limited to affirmative misconduct." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and

- 12 -

> future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.
>
> *In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (internal citations and quotation marks omitted) . . . . Thus, while "sincere efforts to perform parental duties," can preserve parental rights under subsection (a)(1), those same efforts may be insufficient to remedy parental incapacity under subsection (a)(2). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." [*A.L.D.*, 797 A.2d at 340]. A "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id.*

*In re Z.P.*, 994 A.2d 1108, 1117-18 (Pa. Super. 2010) (some citations omitted and formatting altered).

It is well-established that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

Moreover, "[i]t is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority." *In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) (citations omitted); *see also* Pa.R.A.P. 2119(a),

(c) (providing that the argument section of an appellate brief shall contain discussion of issues raised therein and citation to pertinent legal authorities and references to the record). "Where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *M.Z.T.M.W.*, 163 A.3d at 465-66 (citation omitted and formatting altered). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived." *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) (citation omitted).

Here, the trial court explained:

In this case, . . . Father ha[s] been given years to prove [he] can reunify with [C]hildren, and it simply cannot be done. The past damage to [M.A.] by her parents in permitting and looking the other way when she was sex trafficked from age 5 through 8 is despicable conduct. Father, as caught on video, hitting, kicking and calling her foul sexually abhorrent names as she and [S.L.A.] hovered in fear is incapable of remedy. [C]hildren lived in an abusive and dangerous home with [P]arents. It is apparent from their reactions during visits and the testimony proffered by psychologists and therapists that continuation of forced contact with [P]arents will only cause such psychological trauma that will jeopardize their development into adulthood. The [trial] court is unwilling to permit further trauma [to] [C]hildren.

\* \* \*

[Father has] failed to perform parental duties during the entire lives of [C]hildren and such repeated and continued incapacity and abuse has caused [C]hildren to be without parental care necessary for their physical and mental well-being. The conditions cannot and will not be remedied after years of the Agency's involvement. The conditions leading to removal cannot be remedied and termination would best serve the needs and welfare of [C]hildren.

- 14 -

Trial Ct. Op., 8/13/24, at 17-18 (some formatting altered).

Initially, we observe that Father has failed to develop any meaningful argument related to termination of his parental rights with respect to S.L.A. in his brief, as Father only presented argument regarding L.S.A. in his appellate brief. *See, e.g.*, Father's Brief at 11 (arguing that the trial court's decision to terminate Father's "parental rights to [L.S.A.] was not based on competent evidence"). Accordingly, we are constrained to conclude that Father has waived any challenge concerning the termination of his parental rights to S.L.A. *See M.Z.T.M.W.*, 163 A.3d at 465-66. Therefore, we limit our review to the decree terminating Father's parental rights to L.S.A.

Based on our review of the record, we discern no abuse of discretion by the trial court. *See M.E.*, 283 A.3d at 829. As noted previously, Dr. Menta concluded that Father "present[s] himself as quite narcissistic and lacks insight into his limitations as a parent. There is significant concern that his anger is not well-controlled. . . ." Agency Exhibit 11 at 9. Further, Dr. Menta testified that Father "seemed to show very limited empathy for his children, if any[,]" and that she was concerned about Father's ability to parent Children due to his "limited empathy" and his "limited insight." N.T., 4/17/24 (afternoon), at 61. Dr. Menta explained that a lack of empathy "raises the risk of abusive behaviors for both physical abuse, emotional abuse and even sexual abuse . . . . So, if you don't have empathy, there's very little motivation to curtail some of those angry behaviors, angry urges." N.T. Hr'g (afternoon), 4/17/24, at 79-80. Additionally, Dr. Menta testified that "if there's a lack of

empathy, the child is going to feel as though they are not heard, their feelings are not taken into consideration, they're not appreciated. So, a child can develop a lot of insecurity from that." *Id.* at 80.

Father completed a parenting program through Justice Works, but he did not receive passing scores for that program. *See* N.T. Hr'g (afternoon), 4/17/24, at 5-6, 8, 11, 15. After Dr. Menta recommended that Father take additional parenting classes in her parental capacity evaluation, the Agency required that Father participate in additional parenting training, which he failed to do. *See* N.T. Hr'g (afternoon), 4/16/24, at 93-94; N.T. Hr'g (morning), 4/17/24, at 51-52. Significantly, as of the date of the termination of parental rights hearings the Agency had been providing Father with services for over two years. We reiterate that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See Z.P.*, 994 A.2d at 1117-18; *see also R.J.S.*, 901 A.2d at 513 (explaining that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities").

For these reasons, we discern no abuse of discretion by the trial court in concluding that termination pursuant to Section 2511(a)(2) is warranted inasmuch as Father's repeated and continued incapacity, abuse, neglect, or refusal has caused L.S.A. to be without essential parental care, control or subsistence. Further, the conditions and causes of Father's incapacity, abuse, neglect or refusal cannot or will not be remedied. *See A.H.*, 247 A.3d at 443;

*see also Z.P.*, 994 A.2d at 1117-18. For the reasons stated above, we discern no abuse of discretion by the trial court in concluding that termination was appropriate under Section 2511(a)(2).[7] Accordingly, Father is not entitled to relief on this claim.

### Section 2511(b)

As stated above, our review of a termination of parental rights requires a bifurcated analysis of Section 2511(a) and (b). *See L.M.*, 923 A.2d at 511. However, Father has failed to present any arguments concerning the termination of his parental rights pursuant to Section 2511(b) in his brief. *See* Father's Brief at 8-13. Therefore, we conclude that Father has waived any claim regarding Section 2511(b) because he failed to develop it and, therefore, no relief is due. *See M.Z.T.M.W.,* 163 A.3d at 465-66.

Accordingly, the trial court did not err in terminating Father's parental rights. *See M.E.*, 283 A.3d at 829. For these reasons, we affirm.

Decrees affirmed. Jurisdiction relinquished.

_____

[7] We reiterate that we need only agree with the trial court as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *See B.L.W.*, 843 A.2d at 384.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

1/17/2025