2023 PA Super 280

| | | |
|---|---|---|
| IN THE INTEREST OF: K.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: G.C., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 487 WDA 2023 |

Appeal from the Order Entered March 31, 2023
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s):  CP-02-DP00001169-2019

BEFORE:  LAZARUS, J., STABILE, J., and MURRAY, J.

OPINION BY LAZARUS, J.:                    **FILED: December 29, 2023**

G.C. (Father)[1] appeals from the dependency order,[2] entered in the Court

of Common Pleas of Allegheny County, changing the placement goal of K.C.

---

[1] Mother has written a letter "join[ing Father]'s brief insofar as [she] agree[s] that the trial court acted prematurely in changing [Child's p]ermanency [g]oal to 'Subsidized Permanent Legal Custodianship.'"  Mother's Juvenile Court Project Letter, 8/1/23.

[2] "In this Commonwealth, there are few legal principles as well settled as that an appeal lies only from a final order, unless otherwise permitted by rule or by statute." **McCutcheon v. Philadelphia Elec. Co.**, 788 A.2d 345, 349 (Pa. 2002).  Generally, orders changing a placement goal are considered final. **See In re H.S.W.C.-B.**, 836 A.3d 908 (Pa. 2003) (order granting status change final when entered).  Here, under 42 Pa.C.S.A. § 6351(a)(2.1), the court changed K.C.'s placement goal to permanent legal custodianship (PLC), which effectively "transfer[red] permanent legal custody to an individual . . . who . . . [wa]s found by the court to be qualified to receive and care for the child." **Id.**  However, despite the language of section 6351(a)(2.1) that permits the court to "set forth the temporary visitation rights of the parents" at the time it enters its goal change order, the trial court scheduled a follow-up hearing for mid-April to discuss visitation and also scheduled a permanency review hearing for June 28, 2023.  Because of internal inconsistencies in the court's
*(Footnote Continued Next Page)*

(Child) (born 10/2017) from reunification to permanent legal custodianship – non-relative.[3]  ***See*** 42 Pa.C.S.A. § 6351(a)(2.1).[4]  After careful review, we affirm.

_____

March 31, 2023 order, we remanded the matter to the trial court for an explanation as to whether its March 31, 2023 order is, in fact, a final, appealable order.  ***See*** Status Review Order, 3/31/23, at 2 (emphasis added) (order noting "[t]he projected **date by which the goal** . . . **might be achieved is** [] **June 2023**"); ***see also id.*** (emphasis added) (court's order also providing "[o]nce [a] follow-up meeting [regarding visitation] has occurred, the [c]ourt believes it [is] **possible for PLC to be promptly finalized** so that [Child's] case may be closed);" ***id.*** (court noting "[c]ase may be closed by motion from any party **when PLC is ready to be finalized**") (emphasis added); Pa.R.A.P. 1925(a) Opinion, 6/27/23, at 17 (court indicating if parties do not agree on visitation schedule, "[c]ourt is prepared to and anticipates imposing a visitation schedule that serves Child's best interests as the [c]ourt perceives them **at the time it enters the PLC order**") (emphasis added); ***id.*** at 17-18 (court recognizing "Child's dependency case remains open and **the PLC order has not yet been entered**") (emphasis added).  We note that when permanent legal custodianship is granted, visitation issues are no longer within the purview of the juvenile court division.  ***See*** 42 Pa.C.S.A. at § 6351(a)(2.1) ("The court shall refer issues related to support and continuing visitation by the parent to the section of the court of common pleas that regularly determines support and visitation.").  However, subsequently this Court was made aware that in Allegheny County PLC arrangements apparently "do not lend themselves to simultaneous entry of the goal change order and the PLC order."  ***See also*** Trial Court Supplemental Opinion, 10/27/23, at 6.  Thus, we conclude that the instant appeal is taken from a final order changing Child's permanency goal and, thus, is immediately appealable.

[3] ***See*** 2019 Pa. HB 856, Chapter 31 (Family Finding and Kinship Care), § 3102 (Definitions) (defining "Permanent legal custodian" as "[a] person to whom legal custody of the child has been given by order of a court pursuant to 42 Pa.C.S.[A.] § 6351(a)(2.1)").

[4] Section 6351(a)(2.1) provides, if a child is found to be dependent, the court may make the following order of disposition "best suited to the safety, protection, and physical, mental, and moral welfare of the child:
*(Footnote Continued Next Page)*

On September 30, 2019, Child was diagnosed with failure to thrive, requiring, among other things, that Parents implement a structured feeding plan, provide meals in a highchair, offer small portions of food at each meal, and limit distractions while eating. Child's weight had dropped below the third percentile for children her age and gender. In early October 2019, Child was admitted to the Children's Hospital of Pittsburgh (CHP) to address her weight loss issues. On October 16, 2019, Child was gaining weight in CHP as a result of being put on a feeding plan; however, hospital staff noted the Child had an oral aversion resulting from behavioral issues. *See Stipulations* in No. CP-02-AP-0008-22, 7/14/22, at 7(h). CHP agreed to allow Parents and Child to move to a "nesting room" in The Children's Home (TCH) where Parents would be responsible for feeding Child for the week. While there, Child would be weighed daily. Parents met with TCH staff on November 13, 2019, to review the family's progress and determine a discharge plan. Child was discharged

---

(2.1) Subject to conditions and limitations as the court prescribes, transfer permanent legal custody to an individual resident in or outside this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child. A court order under this paragraph may set forth the temporary visitation rights of the parents. The court shall refer issues related to support and continuing visitation by the parent to the section of the court of common pleas that regularly determines support and visitation.

42 Pa.C.S.A. § 6351(a)(2.1).

to return home with Parents, with the condition that they return for regular weight checks at CHP.

On November 25, 2019, the Allegheny County Office of Children Youth and Families (CYF) filed an application for emergency protective custody of Child, who had been readmitted to CHP three days prior. The application alleged that Child "has been diagnosed with failure to thrive[,] . . . has severe eating difficulties, and has been hospitalized at C[HP] and/or admitted to the Children's Home previously due to losing weight." Application for Emergency Protective Custody, 11/25/19, at 3. CYF alleged that at the time Child was admitted to Children's Home, Parents were homeless, and that "at this time, [Child] cannot safely return to the care of her parents when discharged from C[HP]." *Id.* That same day, the court issued an emergency order for protective custody of Child, granting legal custody to CYF.

On November 29, 2019, Child was placed in her current certified foster home, provided by Bethany Christian Services, upon discharge from CHP. Foster parents, R.H. and L.H., are, pursuant to the court's goal change order, Child's intended permanent legal custodians. Child also resides with her foster brothers.[5] Child was adjudicated dependent on January 15, 2020; Parents were granted supervised visits three times a week. Permanency review

---

[5] Parents' three other children were placed in kinship care with maternal grandparents.

hearings were held in June 2020,[6] July 2020, November 2020, and March 2021. After Parents completed coached visitation with Justice Works, their visits with Child transitioned to unsupervised in March 2021.

In May 2021, in response to CYF's motion to have all future visitation between Child and Parents supervised, the court ordered Parents have at least two supervised visits per week in Parents' home and that "CYF may increase the frequency of the supervised visits if deemed appropriate, based on Parents' consistency and progress[] with the twice-weekly visit." Order, 5/25/21. Another permanency hearing was held in July 2021. In October 2021, Father petitioned to have overnight visits with Child. The court denied Father's petition, without prejudice to review the request at the next scheduled permanency review hearing.

At the next permanency hearing, held on November 4, 2021, the court found that Child's placement continued to be necessary and appropriate and that both Mother and Father had "moderately" complied with their permanency plans, but that the placement goal remained return to parent. At that time, Child had been in placement for 15 of the last 22 months. Of significance, the permanency review order noted that "[t]he ongoing dynamic

---

[6] Stephanie Pawlowski, Esquire, from Kids Voice, was appointed as Child's guardian *ad litem* (GAL) and has filed a brief, on behalf of Child, on appeal.

of Mother relying on Father to provide discipline and redirection continues to be observed in the visits." Order, 11/4/21, at ¶ 9.[7]

At a February 2022 permanency hearing, the court found Mother had moderately complied with her permanency plan and that Father had substantially complied. *See* Permanency Review Order, 2/25/22, at 1. Notably, the court "[found] that Parents have made no progress toward reunification over the last review period" and that both Mother's and Father's failure to respond to outreach from service providers has contributed to their delay in receiving vital services. *Id.* at ¶ 10.

_____

[7] On January 26, 2022, on a separate, but related, adoption docket, CYF filed a petition to involuntarily terminate Parents' parental rights to Child, pursuant to 23 Pa.C.S.A. §§ 2511(a)(2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, and to change the permanency goal from reunification to adoption. The court held three days of termination hearings in July 2022, December 2022, and January 2023. On November 3, 2022, the court granted Parents unsupervised visitation with Child for four hours each week. On December 6, 2022, the court extended the hours of unsupervised visitation—from four to eight hours weekly. On January 26, 2023, the court denied CYF's petition to terminate, concluding that Father had eliminated the conditions leading to Child's placement. The court also denied CYF's request to change the goal to adoption. Because we do not have the adoption docket record before us in this dependency case, we are limited to the facts surrounding the filing of the termination petition that have been included in the certified record on appeal. *See In the Interest of S.S.*, 252 A.3d 681, 688 (Pa. Super. 2021) ("Termination proceedings often occur simultaneously with dependency proceedings, but these two types of proceedings remain distinct, with their own docket numbers, records, and divisions within the Court of Common Pleas."); *see also In re J.F.*, 27 A.3d 1017, 1024 n.10 (Pa. Super. 2011) ("It is well-settled that this Court may only consider items which have been included in the certified record[,] and those items which do not appear of record do not exist for appellate purposes.") (citation omitted).

On June 10, 2022, Father filed another petition to modify his visitation schedule, seeking to have the visits occur in his home. The court granted the motion, keeping all visits supervised, but permitting "coached visitation" to occur in the family home. Order, 6/10/22. On July 8, 2022, however, the court granted special relief to CYF by ensuring that Parents' Thursday visits continue to be supervised and occur at the community center near the maternal grandparents' home. **See** Special Relief Order, 7/8/22. At an August 2022 permanency hearing, therapist Bethany Tinstman testified that both Father and Mother were making good progress with intensive family coaching, that Father "has mastered the skills addressed in Phase 1"—focusing on child-directed interaction and strengthening bond between parent and child—and that Parents are engaged and equally involved in the sessions. **See** Permanency Review Order, 8/3/22, at ¶¶ 8-10.

On March 3, 2023, CYF filed a motion for goal change from reunification to permanent legal custodianship. On March 28, 2023, the court held a status conference and hearing on CYF's motion for goal change. At the outset of the hearing, the court noted that in making its decision, it "consider[ed] the entire record of th[e termination of parental rights] proceeding" as well as "all of the [permanency] review hearing orders and findings, all of the decisions on motions []—but, basically, in my view, I'm making a determination based on the entirety of the record to date." N.T. Status Conference and Motion for Goal Change, 3/28/23, at 5-6. At the time of the goal change hearing, Parents had unsupervised visits with Child twice a week—Tuesdays from 4:00 PM-6:00

PM and Saturdays from 11:00 AM-5:00 PM—at Parents' home. *Id.* at 22. Parents and CYF had been discussing starting overnight visits with Child, with another planned meeting to discuss the possibility the following month, in April.[8] *Id.* at 23, 28.[9] In entering her order, the trial judge made it clear that changing the goal to permanent legal custodianship "includes in it the parents' visitation with the child. There will not be an order entered without that being covered." *Id.* at 49.

Father filed a contemporaneous notice of appeal from the court's goal change order and a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(a)(2). On appeal, Father presents the following issues for our consideration:

(1) Did the trial court err and abuse its discretion in changing the permanency goal to [PLC]?

(2) Did the trial court commit an error of law or abuse its discretion by not allowing Father to move toward reunification prior to the date of the hearing by failing to increase visits with the minor child, despite Father having consistently shown progress and met his goals set by [CYF]?

(3) Whether the trial court erred in entering such an order changing the goal so soon after it made findings supporting reunification in the termination proceedings.

---

[8] Obsessive self-stimulation while at Parents' home was one of the main concerns with permitting Child to have overnight visitation with Parents. *Id.* at 24.

[9] During the goal change hearing, Father testified that Mother had just been diagnosed with stage-4 lung cancer. *Id.* at 40.

> (4) Whether the trial court erred in changing the permanency goal without any guarantee that a visitation schedule would be able to be worked out between the parties.

Father's Brief, at 6 (renumbered).

It is well settled that "the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, governs the placement and custody of a dependent child." **See In re N.C.**, [] 909 A.2d 818, 823 (Pa. Super. 2006). The law of this Commonwealth empowers a Juvenile Court to make an award of permanent legal custody as a permanency option for a dependent child. **See** 42 Pa.C.S.A. § 6351(a)(2.1). "This Court reviews an order regarding a dependent child's placement goal pursuant to an abuse of discretion standard." **See Interest of H.J.**, 206 A.3d 22, 25 (Pa. Super. 2019). "In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias[,] or ill will, as shown by the record." **In re N.C.**, **supra** at 822-23 (internal citations and quotations omitted).

"When considering a request to modify permanency goals, the trial court must focus on the health and safety of the child, which takes precedence over all other considerations." **See In re A.H.**, 763 A.2d 873, 878 (Pa. Super. 2000). To that end, the trial court must consider,

> (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the child[]; (5) a likely date by which the goal for the child might be achieved; (6) the

child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citing 42 Pa.C.S.A. § 6351(f)). *See also* Pa.R.J.C.P. 1608(D)(1)(q) (at each permanency review hearing, court must consider "whether the visitation schedule for the child with the child's guardian is adequate, unless a finding is made that visitation is contrary to the safety or well-being of the child").

Moreover, although preserving the unity of the family is a purpose of [the Juvenile Act], another purpose is to "provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter." 42 Pa.C.S.[A.] § 6301(b)(1.1). Indeed, "[t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child." *In re E.F.V.*, [] 461 A.2d 1263, 1267 ([Pa. Super.] 1983) (citation omitted).

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006).

In Pennsylvania, a juvenile court may award permanent legal custody to a child's caretaker pursuant to [s]ection 6351(a)(2.1) of the Juvenile Act. This is an arrangement whereby a juvenile court discontinues court intervention[,] as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. Parental rights are not terminated. *See In re H.V.*, [] 37 A.3d 588, 589 ([Pa. Super.] 2012).

\* \* \*

A trial court may consider permanent legal custody, upon the filing of a petition by a county children and youth agency that alleges the dependent child's current placement is not safe, and the physical, mental, and moral welfare of the child would best be served if subsidized permanent legal custodianship (SPLC) were granted. *See In re S.B.*, 943 A.2d 973, 983-[]84, [(Pa. Super.

- 10 -

2008)]. Upon receipt of this petition, the court must conduct a hearing and make specific findings focusing on the best interests of the child. ***See id.*** In order for the court to declare the custodian a "permanent legal custodian[,]" the court must find that neither reunification nor adoption is best suited to the child's safety, protection[,] and physical, mental[,] and moral welfare. ***See id.***; ***see also*** 42 Pa.C[.]S[.]A[.] § 6351(f.1).

***In re S.H.***, 71 A.3d 973, 977-78 (Pa. Super. 2013). ***See also In re K.T.***, 296 A.3d 1085, 1116 n.33 (Pa. 2023) ("PLC is a permanency goal when neither reunification nor adoption is best suited for the child, 42 Pa.C.S.[A.] §6351(f.1)(3). For example, a court may grant PLC when a caregiver accepts legal responsibility [for] a child[,] but is unwilling or unable to adopt.").

In ***In re S.H.***, ***supra***, our Court held that "neither the Juvenile Act nor the Adoption and Safe Families [A]ct of 1997 prohibit[s] a parent from petitioning the trial court to regain custody of a child who is the subject of an award of permanent legal custody." ***Id.*** at 982. ***See*** Office of Children and Youth and Families Bulletin 3130-10-02/3140-10-03, at 4 (July 30, 2010) (recognizing permanent legal custody is not, in fact, permanent, where parents have right to petition court for custody of child); PA Judicial Deskbook, Juvenile Law Center, 4th ed. (2004), at 151, 155-56 (acknowledging parents who may not be able to rehabilitate themselves within given period of time may be able to reunify with child following establishment of PLC). To hold otherwise would "amount to a *de facto* termination of [a parent's] legal and primary physical custody rights." ***In re S.H.***, ***supra*** at 979.

After a comprehensive review of the parties' briefs, relevant case law and statutes, and the certified record on appeal, we conclude that the court

correctly determined that its order changing the goal to PLC was in Child's best interest. **See** 42 Pa.C.S.A. §§ 6351(f.1)(3) (based upon determinations under subsection 6351(f) and all relevant evidence, court shall consider "[i]f and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian[,] or custodian or being placed for adoption is not best suited to the safety, protection[,] and physical, mental[,] and moral welfare of the child."); **id.** at § 6351(g) ("On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification[,] or termination of placement or other disposition which is best suited to the safety, protection and physical, mental[,] and moral welfare of the child."). Child has been in placement for over three years (more than half of her life) and, "[w]hile Parents have made recent progress with the implementation of services, there is no evidence that Parents, together, are capable of sustaining this progress." Trial Court Opinion, 6/27/23, at 12. **See also In re H.V.**, **supra** (trial court erred changing goal to PLC where children were in placement for three years, but mother alleviated circumstances that led to children's placement, threat of father no longer existed, children wanted to be returned to mother and family home, and mother's home "was [the] only home [children] knew for three, seven[,] and nine years since their respective" births).

Although Father has substantially complied with his service plan goals, progressed to some periods of unsupervised visits, and shown he is capable of parenting Child, the court astutely observed that, without Mother having

the same parenting capability,[10] Father will simply be unable to provide Child with the "irreducible minimum requirements,"[11] especially where he is also a parent to three other young children.

In order for the court to have granted the current goal change, CYF was required to "prove that reunification or adoption is not best suited to [C]hild's safety, protection[,] and physical, mental[,] and moral welfare." *In re S.H.*, *supra* at 979-80. The record bears out that Child continues to have significant emotional, behavioral, and medical needs that require constant supervision and close monitoring. Child's foster family has created a loving and stable environment for Child to ensure that she is properly monitored and supervised so that she is properly fed and is safe in their home. *In re M.T.*, 101 A.3d 1163, 1175 (Pa. Super. 2014) (holding court should consider bond between child and parents, foster parents, and siblings when deciding whether to change goal). Moreover, as evidenced by the court's denial of CYF's petition to terminate Father's parental rights to Child, *see supra* at n.7, the parent-child bond here is so strong that it would not be in Child's best interest to sever same. *See* PA Judicial Deskbook, Juvenile Law Center, 4th ed. (2004),

_____

[10] Mother has made minimal progress toward alleviating the circumstances that led to Child's placement.

[11] *In re J.W.*, 578 A.2d 952, 958 (Pa. Super. 1990) ("Essential parental care . . . denotes certain irreducible minimum requirements to which all children are entitled from their parents, including adequate housing, clothing, food[,] love, and **supervision**.") (emphasis added).

- 13 -

at 155-56 (PLC appropriate permanency option where child has bond with parent that precludes termination of parental rights).

Here, the trial judge, who was well-acquainted with the parties, combed through the voluminous evidence in the parties' Juvenile Division matters and determined that it was in Child's best interest to change the "permanency goal [to] legal custody [so] that she [can] absolutely continue her important and positive relationship with her parents and her siblings[.]" N.T. Status Conference and Motion for Goal Change, 3/28/23, at 14. *See In re K.J.*, 27 A.3d 236 (Pa. Super. 2011) ("It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record.").

Noting the highly deferential standard we afford to a dependency court, we reiterate that:

> we are not in a position to make the close calls based on fact-specific determinations. Not only are our trial judges observing the parties during the hearing, but usually, as in this case, they have presided over several other hearings with the same parties and have a longitudinal understanding of the case and the best interests of the individual child involved. Thus, we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of success of the current permanency plan. Even if an appellate court would have [reached] a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). Although undoubtedly a difficult decision for any jurist, the trial judge commendably balanced the best

interests of Child, which included her need for permanency and stability met by Foster Parents, with the importance of her maintaining a relationship with Father.[12] Because the court's findings are supported by the record, we affirm. *In re A.B.*, 19 A.3d 1084, 1089 (Pa. Super. 2011) (citations and quotation marks omitted) ("As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.").

In his second and fourth issues, which we address together, Father contends that the court erred by not permitting him to "move toward reunification prior to the date of the [goal change] hearing, by failing to increase visits with [C]hild[.]" Father's Brief, at 6. He also claims that the court erred when it changed the goal to PLC "without any guarantee that a visitation schedule would be able to be worked out between the parties." *Id.*

Despite Father's preference that he have overnight, unsupervised visits with Child, the record shows that since May 2021, Father's visits have progressed to not only being unsupervised, but also are now held in his home. Additionally, we remind Father that the use of the term "[PLC] does not confer or divest parents of any substantive rights but[,] rather[,] **addresses the proper venue for visitation and support matters** following the grant of a permanent legal custody arrangement." *In re S.H.*, 71 A.3d at 979 (emphasis added). Father may continue to seek overnight visits or increased

---

[12] We remind Father that he is not precluded from petitioning the trial court to regain custody of Child. *See In re S.H.*, *supra* at 982.

unsupervised visitation with Child, albeit through family court and not juvenile court. **See** 23 Pa.C.S.A. §§ 5324, 5338.

Finally, Father argues that the trial court erred by "changing the goal so soon after it made findings supporting reunification in the termination proceedings." Father's Brief, at 6. First, we note that the court's decision to deny termination did not support reunification, rather it acknowledged that CYF did not prove, by clear and convincing evidence, that changing the goal to *adoption* was in Child's best interests. Moreover, as the court acknowledges in its Rule 1925(a) opinion, "the Juvenile Act does not impose any time restriction on courts as to when they may next consider a goal change following the denial of a [termination of parental rights] petition." Trial Court Opinion, 6/27/23, at 16. Rather the Juvenile Act mandates that a court consider the appropriateness of the permanency goal at each scheduled permanency review hearing.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

12/29/2023