J-A03007-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.H.-D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: Z.H.-D., MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1462 EDA 2024 |

Appeal from the Order Entered May 6, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-DP-0065769-2007

BEFORE:  STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY STABILE, J.:　　　　　　　　　　**FILED MAY 7, 2025**

Appellant, Z.H.-D., appeals from an order denying a petition by the Department of Human Services ("DHS") for goal change to permanent legal custody ("PLC").  We affirm.

The Juvenile Court summarized the factual and procedural history as follows:

> Z.H.-D., who is currently seventeen years of age, was adjudicated dependent and committed to DHS on February 15, 2018.  On March 16, 2018, Z.H.-D. was placed in a treatment level foster home.  On or about August 1, 2019, Z.H.-D. was placed with the resource parent, A.B., with whom he currently resides.  On October 24, 2023, DHS filed a Petition for Goal Change to [PLC].  This court heard testimony regarding this petition on December 12, 2023, and held its decision under advisement.  The court requested that counsel brief the issue.  On May 6, 2024, after reviewing the record and briefs submitted by counsel, the court denied DHS' Petition.  Counsel for Z.H.-D. appealed this Order on May 29, 2024.
>
> Adriana Maradiaga testified that she is a case manager for the Community Umbrella Agency (CUA) that is responsible for

providing services for the family. She noted that she has supervised this case for approximately two years and that the case was opened approximately five years prior because of disagreements between F.H. (Mother) and Z.H.-D. that resulted in Z.H.-D. experiencing a "mental breakdown." She stated that he has been with the current resource parent, A.B., for approximately five years.

Ms. Maradiaga testified that since being in care, Z.H.-D. has not received any therapy and is not taking any medicine for mental health concerns. She also noted that he has not been hospitalized for any reason. Ms. Maradiaga informed the court that Mother has done everything that has been asked of her with respect to achieving reunification with Z.H.-D. She noted that Mother has completed all of her single case plan (SCP) objectives that the court has ordered. She also testified that Mother's home has been assessed and that it is appropriate for reunification with Z.H.-D.

Ms. Maradiaga testified that Z.H.-D. has largely controlled the nature and extent of contact that he has with Mother despite his only being approximately twelve years old when he began living with the current resource parent. She noted that Z.H.-D. has wielded significant discretion about when and if he sees, talks to, or spends time with Mother regardless of the efforts she made toward reunification. Ms. Maradiaga testified that visitation has been exclusively at Z.H.-D.'s discretion and has occurred sparingly because of that. She did note that they speak on the phone and spent time together on his birthday. She stated that their relationship is stable but requires some work. She noted that Z.H.-D. does not want to reunify with Mother and that Mother does not want PLC to be ordered. Ms. Maradiaga curiously testified that she has concerns for Z.H.-D.'s mental health if he is reunified with Mother. Her concern is because of prior hospitalizations when he resided with Mother. This opinion, which the court found baseless and not supported by evidence, was offered even though Z.H.-D.'s last noted mental health issue was at least five years prior, that he receives no therapy whatsoever, and is not prescribed any medication for mental health issues.

Z.H.-D. has declined to attend family therapy and has refused individual therapy for the life of this case. The court noted that family therapy for Z.H.-D. and Mother was ordered on at least eight prior occasions beginning in 2021 when Z.H.-D. was only approximately fourteen years old. Z.H.-D. failed to attend any

- 2 -

sessions despite the court's order and the resource parent did not seem to encourage him, or make him available, to do so. Conversely, Mother has been willing to attend family therapy and to do whatever else was necessary to improve the relationship with her son and work toward reunification. Mother has been fully compliant with her SCP objectives and has done whatever was asked of her since at least March of 2021.

Z.H.-D. testified that he has lived with the resource parent for approximately five years and that he recently has been getting "back on track" in school. He gave credit to his getting back on track to Mother and stated that he remembers that she would not agree with certain behaviors, so he is adjusting to do better. He testified that most of the issues he experienced when living with Mother were due to his own inability to accept the word "no" from her. This seemed to be a theme throughout the testimony.

Multiple witnesses, including Z.H.-D. himself, noted that he has acted out in a negative manner whenever he does not get his way and that he has difficulty distinguishing the differences between wants, needs, and what is best for him. Z.H.-D. surprisingly testified that the conflict he had with Mother was not related to his own mental health. He told the court that the issues were due to his not understanding where Mother was coming from and that he could not accept Mother's unwillingness to give him anything he wanted when she was parenting him. He noted that Mother always made sure that he had what he needed and that he was mentally fine. He poignantly testified that his "needs were met" and that "it was [his] wants that made [him] turn upside down."

Z.H.-D. was asked about his emotional relationship with the resource parent. This was an important question to this court as the theory that resource parent provided an emotionally healthier environment than Mother was a theme throughout the case. Z.H.-D. described the emotional relationship with the resource parent as "alright." He was asked to elaborate and did not. "Alright" was the extent to which he could, or would, describe this important factor. Eventually, he was asked to describe his mental health since he has resided with the resource parent and he testified that his mental health has always been an issue, so it has continued to be rough, seemingly, and concerningly, making no distinction between the state of his mental health while living with the resource parent and his mental health while living with Mother. He also testified to a willingness to reunify with Mother but that

he did not "want to rush it." Z.H.-D. was asked whether he felt as though he had a "good opportunity for success in [the resource parent's] home." This question was clearly aimed at eliciting testimony that he felt as though the resource parent afforded him better opportunities and support than Mother would. Z.H.-D. seemed bothered that the question implied that he would be better off with the resource parent than with Mother. He stated, "I feel like you're putting it as if that's where I need to be in order to be successful. That's somewhere I can be successful at, but I can also be successful with my mother." He went on to testify that he recognizes Mother as a source of support for him.

Mother testified that Z.H.-D. last lived with her in 2019 when he was a twelve-year- old child. She explained that the only mental health diagnosis he has ever had was for attention deficit and hyperactivity disorder (ADHD). She lamented that all the contact she has had with her son has been at his sole discretion since he was placed with the resource parent. Mother testified that she wants to reunify with her son and that she also wants to be sure that he is in the right mindset when that occurs. She reiterated that she believes family school would be an asset to them both and expressed a willingness to participate. Mother's testimony was genuine, and she presented as a stable and caring parent who has resided in the same appropriate home for thirteen years and has been employed by the City of Philadelphia for almost two decades, the last ten as a police dispatcher.

The resource parent, A.B., testified that Z.H.-D. has resided with her for approximately five years but that she does not remember his age when he was placed with her. She noted that she has been a foster parent for approximately sixteen years and that she has fostered twelve children. She maintains PLC for two children, has adopted one, and has legal guardianship of another. She noted that whenever therapy is discussed she points out to Z.H.-D. that attending therapy "is his choice."

D.P. testified that he is Z.H.-D.'s older brother and that they share the same father but different mothers. He appeared to have the strongest relationship with Z.H.-D. and their love for each other was obvious to the court. D.P. stated that he has known Z.H.-D. for all of Z.H.-D.'s life and that he knows both Mother and the resource parent. It surprised this court that D.P. noted that he has a closer relationship with Mother than he does with the resource parent since he seems to spend more time with Z.H.-D.

than anyone and Z.H.-D. has resided with the resource parent for the last five years.

D.P. testified that "[ Mother] is a great mother" and that he has stated to Z.H.-D. that there is a difference between a parent giving him what he wants and what he needs. He expounded on this concept by testifying that "a lot of [Z.H.-D.'s] anger issues earlier in life up until the early teens was because he just seems to have this mental disposition that if he wants it, he's supposed to have it. And if he doesn't have it all be damned." He posited that both he and Z.H.-D. were likely angry when they were younger because their father was not there for them.

D.P. testified that he has no idea what caused Z.H.-D.'s anger toward Mother and implied that Z.H.-D. has never offered an explanation for it. Tellingly, he noted that the only reason offered by Z.H.-D. is that he likes living with the resource parent more because he likes his freedom. He testified that he has tried to explain to Z.H.-D. that he left Mother's home when he was only ten or eleven years old and that now he is seventeen years old so his "freedom" would not be the issue he is making it out to be. He explained that the rules that existed when Z.H.-D. was ten would be different now that he is almost an adult. The court inferred that Z.H.-D. recognizes that Mother's home has rules and that perhaps the resource parent's home is less structured. D.P. again stated that Z.H.-D. is focused on getting what he wants without recognizing there is a difference between what he wants and what he needs. He noted that Mother has tried to connect with Z.H.-D. to figure out what his triggers were and to take the necessary steps to establish a treatment plan for him. He also testified that he believes Z.H.-D. should reunify with Mother but that it should not be done immediately.

Pa.R.A.P. 1925 Opinion, 9/12/24, at 2-8.

Z.H.-D. timely appealed the order denying the petition for goal change to PLC. Both Z.H.-D. and the lower court complied with Pa.R.A.P. 1925. Z.H.-D. raises two issues in this appeal:

A. DID THE TRIAL COURT ERR AS A MATTER OF LAW AND ABUSE ITS DISCRETION IN DENYING DHS' PETITION FOR A GOAL CHANGE TO [PLC], WHERE DHS PRESENTED OVERWHELMING

EVIDENCE THAT NEITHER REUNIFICATION NOR ADOPTION WERE IN APPELLANT'S BEST INTEREST, AND THAT GRANTING PERMANENT LEGAL CUSTODY TO FOSTER MOTHER BEST SERVED APPELLANT'S NEEDS AND WELFARE?

B. DID THE TRIAL COURT ERR AS A MATTER OF LAW AND ABUSE ITS DISCRETION BY DENYING DHS' PETITION FOR GOAL CHANGE TO [PLC], WHERE IT GAVE INADEQUATE WEIGHT TO THE PREFERENCES OF APPELLANT, WHO DEMONSTRATED SIGNIFICANT INTELLIGENCE AND MATURITY?

Z.H.-D.'s Brief at 2.

The Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, "governs the placement and custody of a dependent child." *In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006). The Act authorizes the Juvenile Court to make an award of permanent legal custody as a permanency option for a dependent child. 42 Pa.C.S.A. § 6351(a)(2.1). We review orders concerning a dependent child's placement goal for abuse of discretion. *Interest of K.C.*, 310 A.3d 296, 303 (Pa. Super. 2023). "In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias[,] or ill will, as shown by the record." *Id.*

"When considering a request to modify permanency goals, the trial court must focus on the health and safety of the child, which takes precedence over all other considerations." *Id.* at 303. Under the Juvenile Act, the court may award PLC to a child's caretaker. 42 Pa.C.S.A. § 6351(a)(2.1). In this arrangement, the court discontinues court intervention as well as supervision by a county agency and awards custody of a dependent child, on a permanent

- 6 -

basis, to a custodian. Parental rights are not terminated. *K.C.*, 310 A.3d at 304.

At a PLC hearing, the trial court must consider multiple factors. For purposes in this case, the relevant factors include:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility, and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

42 Pa.C.S.A. § 6351(f)(1-6). For the court to order PLC, it must find that neither reunification nor adoption is best suited to the child's safety, protection, and physical, mental, and moral welfare. *K.C.*, 310 A.3d at 304.

Importantly, we afford a "highly deferential standard" to a dependency court's credibility determinations. *Id.* at 306. To elaborate,

we are not in a position to make the close calls based on fact-specific determinations. Not only are our trial judges observing the parties during the hearing, but usually, as in this case, they have presided over several other hearings with the same parties and have a longitudinal understanding of the case and the best interests of the individual child involved. Thus, we must defer to

- 7 -

the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of success of the current permanency plan. Even if an appellate court would have [reached] a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court.

*Id.*

In his first argument, Z.H.-D. contends that the Juvenile Court abused its discretion in denying DHS's petition to change the permanency goal to PLC, because DHS presented "overwhelming" evidence in support of this petition. We disagree. The Juvenile Court reasoned:

This court denied DHS' Petition to change Z.H.-D.'s permanency goal to PLC and held that continued steps aimed at reunification with Mother were in his best interest. It was apparent to this court that Mother's love for Z.H.-D. is genuine and that she has done everything that has been asked of her by CUA and this court. Z.H.-D. was vested with far too much unchecked discretion for a child who was only approximately twelve years old when he began living with the resource parent. A twelve-year-old with purported mental health issues was permitted to decide whether he received individual therapy, whether he attended family therapy, and whether he would allow Mother, who was fully compliant with her SCP objectives, maintained an appropriate home, and was employed, to see or talk to him. Perhaps the dependency process permitted this child to make too many important decisions about what he believed was best for him at an age when doing so was impossible.

The testimony of Z.H.-D. and his brother D.P. made it clear that Z.H.-D. wishes to continue residing with the resource parent because he still associates Mother's home as being one with structure and rules. It was apparent to the court that the resource parent, who should be commended for serving in that role, maintained a residence with multiple other foster children that seemed less structured but was more favorable to Z.H.-D. because it afforded him the "freedom" that he seems to cherish and selfishly value over everything as many children would.

- 8 -

This court considered Z.H.-D.'s expressed desire for the resource parent to be awarded PLC of him. The court was not persuaded by Z.H.-D.'s "want" as it did not find, based on the evidence presented, that this desire was in Z.H.-D.'s best interest. While a child's wishes are certainly a factor that must be considered when determining a child's best interests, the child's wishes must be based upon good reasons, and the child's maturity and intelligence must be taken into account." *In re K.C.*, 903 A.2d 12, 15 (Pa. Super. 2006). Z.H.-D. described his emotional relationship with the resource parent as "alright" and refused to expound on what that meant. He also testified that his chances of succeeding in life are no better if he resides with the resource parent than if he resides with Mother. He also acknowledged that most of his issues with mother stemmed from his own juvenile unwillingness to accept no for an answer while his Mother parented him. He seemed to deny that his mental health was any better or worse since he has resided with the resource parent than it was when he resided with Mother. The testimony and evidence presented made it clear to the court that the primary reason Z.H.-D. has thwarted attempts at reunification with Mother is that he has more freedom to do whatever he wants while living with the resource parent.

Freedom is not in a child's best interest despite what that child might believe. The home of a dedicated and loving parent who is aware of her child's needs, like mother, is in his best interest. Both Z.H.-D. and D.P. acknowledged that Z.H.-D.'s issues with Mother had more to do with childish tantrums about not always getting his way than it did with a diagnosed and treated mental health disorder. Importantly, it appears that the only mental health diagnosis Z.H.-D. has ever received was for ADHD. Counsel failed to present any testimony from a treating mental health professional or an expert in the field, while relying on speculative concerns about Z.H.-D.'s mental health if reunification were to occur as the lynchpin of their argument in favor of PLC. It is of great significance to this court that despite some witnesses unsupported concern for Z.H.-D.'s mental health if further steps toward reunification occurred, he has received no counseling, no therapy, and no mental health treatment since being placed with the resource parent. The court found this opinion, and argument, unsupported by any evidence and entirely speculative.

Mother and D.P. provided valuable, truthful, and genuine testimony about Z.H.-D. who is clearly a family member that they

love unconditionally. Conversely, the court sensed an aspect of gamesmanship from Z.H.-D., who is currently two months shy of adulthood, during his testimony. For the life of this case, Z.H.-D. has been permitted to do whatever he wants, whenever he wants, and with whomever he wants, with no regard for what the court has ordered or what is in his best interest. His decisions have always been driven more by what is convenient and easy for him than by what is best for him. Unfortunately, counsel for Z.H.-D, the Department of Human Services, and the Community Umbrella Agency have been both intentionally and unintentionally complicit in allowing much of this to occur. Reasonable efforts to reunify Z.H.-D. with his fully compliant mother took a backseat to maintaining the status quo in this case by following the path of least resistance. This court can no longer allow the mismanagement of this case to continue. The court strongly believes the evidence presented showed that it is in the best interest of this child to deny PLC, and for the parties to focus their efforts on reunification with the person who is fully compliant, without fault, who has attended every dependency hearing, and, most importantly, who will love and support this child unconditionally long after PLC would end, his Mother.

The testimony proved that DHS' Petition for Goal Change to Permanent Legal Custody should be denied as doing so was in Z.H.-D.'s best interest.

Pa.R.A.P. 1925 Opinion, 9/12/24, at 10-12.

Having reviewed the record, we conclude that the court's decision was a proper exercise of discretion. The court carefully considered the testimony of multiple witnesses, including Z.H.-D. and Mother. The court determined that PLC was not in Z.H.-D's best interests due to (1) the court's reservations about Z.H.-D.'s judgment, maturity, and credibility, (2) Mother's full compliance with her SCP objectives and her love for Z.H.-D, (3) the speculative nature of the testimony that Z.H.-D. might suffer relapse from further attempts at reunification, and (4) the fact that DHS, CUA and the foster

parent have catered to Z.H.-D.'s selfish, short-term wishes instead of facilitating his long-term growth. Contrary to Z.H.-D.'s claim, the evidence in favor of PLC was not overwhelming. This case turned in large part on the court's assessment of Z.H.-D.'s maturity and credibility. Although a child's wishes are an important factor in determining what is his best interests, his wishes "must be based upon good reasons, and the child's maturity and intelligence must be taken into account." **K.C.**, 903 A.2d 12, 15 (Pa. Super. 2006). The court found that PLC was not proper due in significant part to serious concerns about Z.H.-D.'s maturity and credibility. To accept Z.H.-D.'s argument that the evidence in favor of PLC is "overwhelming" would require us to substitute our own view of Z.H.-D.'s credibility and maturity in place of the Juvenile Court's finding, a step we cannot take. **K.C.**, 310 A.3d at 306 (appellate court cannot reweigh the court's findings on credibility in dependency proceeding).

In the course of arguing that the evidence was "overwhelming," Z.H.-D. criticizes the Juvenile Court for failing to address several factors in Section 6351(f)—specifically, "the extent of progress (as opposed to compliance) made toward alleviating the circumstances that brought Z.H.-D. into care; a likely date by which the placement goal of reunification might be achieved; whether Z.H.-D. was safe in his placement; and the length of time he has been in placement." Z.H.-D.'s Brief at 37. Z.H.-D. waived this portion of his

argument by failing to raise it in his Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal.

It is well-settled that any issue not raised in a Rule 1925(b) statement is waived. **Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa. 2011). Rule 1925 violations may be raised by the appellate court *sua sponte.* **Id.**

Z.H.-D.'s Rule 1925(b) statement raised the following issues:

1. The Trial Court erred as a matter of law and abused its discretion by denying the Petition for Goal Change to Permanent Legal Custody filed by [DHS], where DHS presented overwhelming evidence that neither reunification nor adoption were in [Z.H.-D.]'s best interest.

2. The Trial Court erred as a matter of law and abused its discretion by denying DHS' Petition for Goal Change to Permanent Legal Custody, where DHS and [Z.H.-D.] presented overwhelming evidence for the Trial Court to conclude that granting Permanent Legal Custody to [Z.H.-D.]'s foster parent best served [Z.H.-D.]'s needs and welfare.

3. The Trial Court erred as a matter of law and abused its discretion by denying DHS' Petition for Goal Change to Permanent Legal Custody, where it gave inadequate weight to the preferences of [Z.H.-D.], who demonstrated significant intelligence and maturity.

Pa.R.A.P. 1925(b) Statement, 5/29/24. None of these issues stated, or even implied, that the Juvenile Court failed to address factors required for consideration under Section 6351(f). Accordingly, we conclude that this portion of Z.H.-D.'s argument is waived.

In his second argument on appeal, Z.H.-D. argues that the Juvenile Court gave inadequate weight to Z.H.-D.'s preferences in view of his intelligence and maturity. As discussed above, the Juvenile Court found that

PLC was not proper due in significant part to serious concerns about Z.H.-D.'s maturity and credibility. To accept Z.H.-D.'s argument that the court gave inadequate weight to his "intelligence and maturity" would require us to substitute our own view of Z.H.-D.'s credibility and maturity in place of the Juvenile Court's finding, a step we cannot take. ***K.C.***, 310 A.3d at 306 (appellate court cannot reweigh the court's findings on credibility in dependency proceeding).

For these reasons, we affirm the order denying the petition for goal change to PLC.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/7/2025