J-S44014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1553 EDA 2024 |

Appeal from the Decree Entered May 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000165-2024

| | | |
|---|---|---|
| IN THE INTEREST OF: C.E.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.H., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1554 EDA 2024 |

Appeal from the Decree Entered May 29, 2024
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000166-2024

BEFORE:  NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED FEBRUARY 19, 2025**

J.H. (Mother) appeals from the decrees terminating her parental rights

to A.M.H. (born in October of 2009) and C.E.H. (born in February of 2012)

(collectively, Children).[1]  Mother's counsel, Gary S. Server, Esq. (Counsel) has

---

[1] Father's parental rights to Children were terminated on the same date. Father filed separate appeals from the goal change orders and the termination decrees, which we will address in a separate memorandum.

filed an application for leave to withdraw and an **Anders**/**Santiago**[2] brief. After review, we grant Counsel's application to withdraw and affirm.

Briefly, on June 9, 2022, the Philadelphia Department of Human Services (DHS) received a General Protective Services (GPS) report indicating that Children did not have a place to stay. As part of its investigation, DHS caseworkers determined that Father was transient, Mother was living in her car, and Children had been staying with their paternal uncle and aunt. Further, Paternal Uncle had thrown Father out of Paternal Uncle's home after a dispute. On or about June 11, 2022, Children began staying with their maternal cousin, A.B, and her husband, J.B. (Foster Parents).

The trial court adjudicated Children dependent on August 31, 2022. DHS subsequently formally placed Children in kinship foster care with Foster Parents, and Children have remained with Foster Parents throughout the underlying dependency matter. DHS filed petitions to involuntarily terminate Mother's parental rights (TPR petitions) on April 22, 2024.

The trial court conducted a hearing (TPR hearing) on May 29, 2024. Mother failed to appear for the hearing and the trial court found that DHS had made reasonable efforts to serve Mother with notice of the hearing. Mother was represented at the hearing by Counsel. At the TPR hearing, Children were

_____

[2] **Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009); **see also In re V.E.**, 611 A.2d 1267, 1275 (Pa. Super. 1992) (extending **Anders** to appeals involving the termination of parental rights).

represented by guardian *ad litem* (GAL) Aaron Mixon, Esq., and by their legal counsel, Edward Louden, Jr., Esq. **See** N.T. TPR Hr'g, 5/29/24, at 2, 7; Order Appointing GAL, CP-51-DP-714-2022, 8/15/22; Permanency Review Order, CP-51-DP-714-2022, 2/28/24, at 2 (appointing Attorney Louden as Children's legal counsel).

At the hearing, DHS presented testimony from Anajah Custus, a Community Umbrella Agency (CUA) case manager. The trial court also interviewed Children, then fourteen and twelve years old, *in camera*.[3]

Ms. Custus explained that she had been the case manager for this family for two months. **See** N.T. TPR Hr'g, 5/29/24, at 14-15. She explained that DHS had opened the dependency matter because Parents had lost their housing, and Mother was living in her car at the time. **See id.** After Parents lost their home, Children originally resided with Paternal Uncle, but Parents later arranged for Children to stay with Foster Parents. **See id.** Mother's single case plan objectives included visitation with Children, parenting skills training, obtaining appropriate housing, and random screenings for drugs and alcohol. **See id.** at 17.

_____

[3] We note that the notes of testimony from the trial court's *in camera* interviews with Children are not part of the certified record. We remind Counsel that it is an appellant's "responsibility to provide a complete certified record on appeal." **In re J.F.**, 27 A.3d 1017, 1023 n.10 (Pa. Super. 2011) (citations and quotation marks omitted); **see also** Pa.R.A.P. 1921, Note (stating "[u]ltimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials" (citation omitted)).

The trial court referred Mother to the Achieving Reunification Center (ARC)[4] on April 25, 2023 for parenting, housing and employment services. *See* Exhibit DHS-4 at 28 (trial court docket entries, CP-51-DP-714-2022); *see also* N.T. TPR Hr'g, 5/29/24, at 19.  Mother completed training courses at the ARC regarding parenting and housing.  *See* N.T. TPR Hr'g, 5/29/24, at 19. However, as of the date of the TPR hearing, Mother did not have appropriate housing because she was residing in a shelter.  *See id.* at 20.  Further, Mother was unemployed as of that date.  *See id.*

The Bucks County Court of Common Pleas issued a bench warrant for Mother on February 14, 2024, after she failed to appear for a pretrial conference in a criminal matter where she had been charged with retail theft and drug offenses.  *See id.* at 18; *see also* Exhibit DHS-6.  Mother told Ms. Custus that she would contact the public defender's office to address the bench warrant, but the warrant remained outstanding as of the date of the TPR hearing.[5]  *See* N.T. TPR Hr'g, 5/29/24, at 18.

Mother told Ms. Custus that she had struggled with alcohol abuse in the past and provided Ms. Custus with documentation that she completed a substance abuse  rehabilitation program in December of 2022.  *See id.* at 16. Ms. Custus directed Mother to attend drug and alcohol screenings at the trial

---

[4] *See In re D.R.-W.*, 227 A.3d 905, 909 (Pa. Super. 2020).

[5] The certified record does not contain any evidence regarding the outcome of the criminal proceedings against Mother.

- 4 -

court's Clinical Evaluation Unit (CEU)[6] on April 29, 2024 and May 24, 2024, but Mother did not attend either screening. *See id.* at 21. Mother told Ms. Custus that she was not able to attend, but Mother did not provide any additional information regarding her failure to appear. *See id.* at 22.

Ms. Custus testified that Mother had visitation at Children's discretion, and Mother only visited Children once at Foster Parents' home. *See id.* at 20-21. As of the date of the TPR hearing, Children did not want further visitation with Mother because Mother had been inconsistent in attending visits in the past and they felt let down. *See id.* Ms. Custus opined that Mother has not taken appropriate steps to maintain a bond with Children. *See id.* at 22-24.

Ms. Custus opined that Children would not experience irreparable harm if Mother's parental rights were terminated because Children reported that they do not have a parental relationship with Mother and do not want to have a relationship with Mother. *See id.* at 23-25. Ms. Custus opined that termination of Mother's parental rights was in Children's best interests so that they can be adopted. *See id.* at 26-28, 42-43.

At the conclusion of the hearing, the trial court terminated Mother's parental rights to Children pursuant to Section 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b) of the Adoption Act.[7]

---

[6] *See In re K.J.*, 27 A.3d 236, 239 (Pa. Super. 2011).

[7] 23 Pa.C.S. §§ 2101-2938.

Mother timely appealed from the decrees terminating her parental rights[8] and simultaneously filed concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). In lieu of a Rule 1925(a) opinion, the trial court issued a notice of compliance with Rule 1925(a) in which it referred to sections from the notes of testimony where the court stated its reasons for terminating Mother's parental rights on the record.[9] **See** Trial Ct. Rule 1925(a) Notice, 7/24/24, at 1-2 (unpaginated).

On appeal, Counsel has filed a petition to withdraw and an **Anders**/**Santiago** brief that identifies the following issues:

1. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S.[] [§] 2511 (a)(1), (2), (5), (8)?

---

[8] Mother did not appeal from the orders changing Children's permanency goals to adoption.

[9] We emphasize that our standards of review require deference to the trial court's findings of fact and credibility determinations and that, generally, this requires the filing of an opinion pursuant to Pa.R.A.P. 1925(a). **See In re Adoption of S.P.**, 47 A.3d 817, 826-27 (Pa. 2012) (noting that "there are clear reasons for applying an abuse of discretion standard of review in [dependency and termination of parental rights] cases" and acknowledging that "unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents" (citations omitted)); **see also In re S.K.L.R.**, 256 A.3d 1108, 1124 (Pa. 2021) (emphasizing that "[w]hen a trial court makes a 'close call' in a fact-intensive case . . . the appellate court should not search the record for contrary conclusions or substitute its judgment for that of the trial court").

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of [Children] as required by the Adoption Act, 23 Pa.C.S.[] [§] 2511(b)?

*Anders*/*Santiago* Brief at 6 (some formatting altered).

When faced with an *Anders*/*Santiago* brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. *See In re X.J.*, 105 A.3d 1, 3 (Pa. Super. 2014). As this Court has stated:

To withdraw pursuant to *Anders*, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [*Anders*] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

With respect to the third requirement of *Anders*, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

*In re J.D.H.*, 171 A.3d 903, 907 (Pa. Super. 2017) (citations and quotation marks omitted).

Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in *Santiago*:

(1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth

counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***X.J.***, 105 A.3d at 3-4 (quoting ***Santiago***, 978 A.2d at 361).

"Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." ***Id.*** at 4 (citations omitted). Our independent review is not limited to the issue(s) discussed by counsel, but extends to "additional, non-frivolous issues" that may have been overlooked by counsel. ***J.D.H.***, 171 A.3d at 908 (citation omitted). An appeal is frivolous when it "lacks any basis in law or fact." ***Santiago***, 978 A.2d at 356 (citation omitted).

Instantly, Counsel has filed an application for leave to withdraw that states that he conscientiously reviewed the record and determined that the appeal is frivolous. He has also provided this Court with a certificate of service demonstrating that he served Mother with a copy of his ***Anders***/***Santiago*** brief, application for leave to withdraw, and a letter advising Mother of her right to retain new counsel or proceed *pro se* or and the right to raise any additional points that Mother deemed worthy of consideration. Additionally, Counsel's ***Anders***/***Santiago*** brief provides a summary of the essential facts and procedural history of the case. Counsel also sets forth his reasons for concluding that Mother's appeal is frivolous. For these reasons, we conclude that Counsel has substantially complied with the technical requirements set

forth above, and we proceed to an independent review of Counsel's assessment that the appeal is frivolous because there was sufficient evidence to terminate Mother's parental rights. *See X.J.*, 105 A.3d at 4.

## Section 2511(a)(2)

Our standard of review in this context is well-settled:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re H.H.N.*, 296 A.3d 1258, 1263 (Pa. Super 2023) (citing *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013)); *see also In re Q.R.D.*, 214 A.3d 233, 239 (Pa. Super. 2019) (explaining that "the trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence" (citation omitted)).

> Termination of parental rights is governed by § 2511 of the Adoption Act[, 23 Pa.C.S. §§ 2101-2938]. Subsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination. In evaluating whether the petitioner proved grounds under § 2511(a), the trial court must focus on the parent's conduct and avoid using a balancing or best interest approach. If the trial court determines the petitioner established grounds for termination under § 2511(a) by clear and convincing evidence, the court then

must assess the petition under § 2511(b), which focuses on the child's needs and welfare. [**T.S.M.**, 71 A.3d at 267].

**In re M.E.**, 283 A.3d 820, 830 (Pa. Super. 2022) (some citations omitted and some formatting altered); **see also Q.R.D.**, 214 A.3d at 239 (explaining that if "the court determines the parent's conduct warrants termination of his or her parental rights, the court then engages in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child" (citation omitted and formatting altered)). We note that we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Section 2511(a)(2) provides as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2).

To satisfy the requirements of [Section] 2511(a)(2), the moving party must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or

- 10 -

refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. The grounds for termination are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied.

*In re C.M.K.*, 203 A.3d 258, 262 (Pa. Super. 2019) (citations and quotation marks omitted).

Further, this Court has explained:

Unlike subsection (a)(1), subsection (a)(2) does not emphasize a parent's refusal or failure to perform parental duties, but instead emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being. Therefore, the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and strong, continuous parental ties, which the policy of restraint in state intervention is intended to protect. This is particularly so where disruption of the family has already occurred and there is no reasonable prospect for reuniting it.

*In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008) (internal citations and quotation marks omitted).

Thus, while "sincere efforts to perform parental duties," can preserve parental rights under subsection (a)(1), those same efforts may be insufficient to remedy parental incapacity under subsection (a)(2). "Parents are required to make diligent efforts toward the reasonably prompt assumption of full parental responsibilities." [*In re A.L.D.*, 797 A.2d 326, 340 (Pa. Super. 2002)]. A "parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id.*

*In re Z.P.*, 994 A.2d 1108, 1117-18 (Pa. Super. 2010) (some citations omitted and formatting altered).

- 11 -

It is well-established that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

Here, the trial court explained:

[C]hildren in this case were adjudicated [dependent] on August 31, 2022, which was 21 months ago, and TPR petitions were filed on April 22, 2024.

This is not a case just about housing. This is a case for a number of objectives that haven't been met by [] Parents. Both Parents were last in attendance in court on August 31, 2023. At that time, the order reflected that [] Parents had remaining objectives, which included the CEU and the screenings since last August, and they have not been meeting their objectives since that time.

Despite the testimony today, I don't find that they were in moderate compliance and progress. I find that their compliance and progress since the last hearing date is minimal for both of them.

\* \* \*

Under 2511(a)(2), it indicates "the repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control, or subsistence necessary for his or her physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."

It's been almost two years since the case was adjudicated, and Parents have not demonstrated an ability to rise beyond any moderate compliance and moderate progress throughout the life of this case, and in any event, their compliance and progress have decreased throughout the life of this case. We've seen . . . arrest and active bench warrants. We've seen a number of issues to

- 12 -

show that these children have been without the essential parental care and control from [] Parents throughout the life of this case and that the causes of incapacity, abuse, neglect, or refusal cannot or will not be remedied by the parent.

The fact that Parents completed a parenting or housing course, at this point, almost a year ago and have not been actively able to demonstrate that those programs have allowed them to obtain housing or demonstrate an ability to parent [Children] is not enough to show that they have the ability to remedy the situation.

[Children] are the life of this case. [They h]ave been open to allowing [] Parents the time to show them that they have the ability to parent them, and they're open to having that relationship, but apparently, [Children], at this point, have reached the point where they are not willing to do that. But they have given [] Parents both adequate time to prove to them, not just with their words and representations they make when they've sporadically shown up in court, but through their actions, to show them that they want to be there for them as [] Parents and they have not done that for the life of this case.

N.T. TPR Hr'g, 5/29/24, at 58-62 (some formatting altered).

Following our review, we conclude that the trial court's findings are supported by competent, clear, and convincing evidence in the record, and we find no error in the trial court's legal conclusions. *See H.H.N.*, 296 A.3d at 1263. The record confirms that Mother has made minimal progress with her single case plan objectives during the almost twenty-one-month period in which Children has been in DHS's care at the time of the hearing. *See* N.T. TPR Hr'g, 5/29/24, at 17. Specifically, Mother has failed to consistently visit Children, obtain adequate housing, or consistently take part in drug and alcohol screenings. *See id.* at 20-25.

Therefore, on this record, we conclude that DHS has established by clear and convincing evidence that Mother has a repeated and continued incapacity,

Mother's incapacity has caused Children to be without essential parental care, control or subsistence, and the cause of Mother's incapacity cannot be remedied. *See C.M.K.*, 203 A.3d at 262; *see also Z.P.*, 994 A.2d at 1117-18; *R.J.S.*, 901 A.2d at 513 (explaining that "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities"). For these reasons, we discern no abuse of discretion by the trial court in concluding that termination was appropriate under Section 2511(a)(2).[10] Accordingly, Mother is not entitled to relief on this claim.

## Section 2511(b)

We next review the trial court's conclusion that involuntarily terminating Mother's parental rights best serves Children's developmental, emotional, and physical needs and welfare pursuant to Section 2511(b).

Section 2511(b) states:

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein

---

[10] We reiterate that we need only agree with the trial court as to one subsection of Section 2511(a), as well as Section 2511(b), to affirm an order terminating parental rights. *See B.L.W.*, 843 A.2d at 384.

which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

This Court has explained:

While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)), *abrogated in part on other*

*grounds by In re K.T.*, 296 A.3d 1085 (Pa. 2023).

Our Supreme Court has stated that "if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which 'is not always an easy task.'" *K.T.*, 296 A.3d at 1106 (quoting *T.S.M.*, 71 A.3d at 267). In *K.T.*, our Supreme Court explained that "a court conducting the Section 2511(b) needs and welfare analysis must consider more than proof of an adverse or detrimental impact from severance of the parental bond." *Id.* at 1113. Indeed, the *K.T.* Court emphasized that "the parental bond is but one part of the overall subsection (b) analysis, which includes a determination of whether the bond is necessary and beneficial to the child, *i.e.*, whether

maintaining the bond serves the child's developmental, physical, and emotional needs and welfare." ***Id.***

"Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***T.S.M.***, 71 A.3d at 268 (citation omitted). More specifically, courts must consider "the child's need for permanency and length of time in foster care[;] whether the child is in a pre-adoptive home and bonded with foster parents; and whether the foster home meets the child's developmental, physical and emotional needs, including intangible needs of love, comfort, security, safety, and stability." ***K.T.***, 296 A.3d at 1113 (footnote omitted and formatting altered).

In weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***T.S.M.***, 71 A.3d at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id.***

> Here, the trial court explained:
>
> Under 2511(b), there is no parent-child bond between [A.M.H.] and [C.E.H.] in either of the biological parents. There was – [Children] both testified quite clearly that they didn't feel that [Parents] were parents to them when they were in their care, and [Children] certainly have not experienced any kind of parental bond with [Parents] since they've been removed from [Parents'] care, and [Children are] both interested in severing the rights of their parents because there is no parental bond. [Children] don't look to [Parents] to meet any of their needs.

- 16 -

I find that they would suffer no irreparable harm in terminating parental rights in the case, and I find that it's in [Children's] best interest to change the goal to adoption today.

N.T. TPR Hr'g, 5/29/24, at 64-65.

Based on our review of the record, we discern no abuse of discretion by the trial court in concluding that termination of Mother's parental rights would best serve Children's developmental, physical, and emotional needs and welfare. *See K.T.*, 296 A.3d at 1113; *T.S.M.*, 71 A.3d at 267. Although Children are not in a pre-adoptive home, Ms. Custus testified that Children have been interviewing with prospective adoptive parents and they are excited by the prospect of being adopted into a family that will provide them with a sense of belonging. *See* N.T. TPR Hr'g, 5/29/24, at 26, 28. Ms. Custus further explained that Children would not experience irreparable harm if Mother's parental rights were terminated because they do not have a parent-child relationship with Mother. *See id.* at 23-25. Ms. Custus opined that termination of Mother's parental rights was in Children's best interests so that they can be adopted. *See id.* at 26-28, 42-43.

For these reasons, we discern no abuse of discretion by the trial court in concluding that termination was appropriate under Section 2511(b). *See H.H.N.*, 296 A.3d at 1263. Therefore, Mother is not entitled to relief on this claim.

Additionally, we have conducted an independent review of the record and conclude that Mother's appeal is frivolous and that Counsel has not

J-S44014-24

overlooked any additional, non-frivolous issues.[11]

For these reasons, we grant Counsel's petition to withdraw, affirm the decrees terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Decrees affirmed. Counsel's petition to withdraw is granted. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/19/2025

---

[11] We note that at the TPR hearing, Mother's counsel did not contest the adequacy of service of the TPR petition or notice of the TPR hearing. *See* N.T. TPR Hr'g, 5/29/24, at 8. Where a party abandons a challenge to service, that issue is waived on appeal, and waived issues are frivolous. *See In re S.C.B.*, 990 A.2d 762, 766-67 (Pa. Super. 2010) (explaining that a party's "failure to object [to an error] at trial constitutes a waiver of this ground for appeal[]" and that "[i]t is axiomatic that claims that were not raised in the trial court may not be raised for the first time on appeal" (citations omitted)); *see also Commonwealth v. Tukhi*, 149 A.3d 881, 888 (Pa. Super. 2016) (citation omitted) (stating that, in the context of an *Anders*/*Santiago* brief, "[a]n issue that is waived is frivolous" (citation omitted)).

- 18 -